### SARAH A. CLYNE v. DEDERICK H. HELMES.

1. In an action of tort to recover damages for personal injuries, an allegation of duty is insufficient. The facts and circumstances from which the duty arises must be set out in the declaration, and the sufficiency of the pleading must be determined from the facts from which the duty is deduced.

2. On demise of a house or lands, there is no contract or condition implied that the premises shall be fit and suitable for the use for which the lessee requires them.

3. The exemption of a landlord from liability for injuries sustained by a tenant by reason of the ruinous condition of the demised premises, where there is neither a contract nor fraud, applies as well to members of the family of a tenant as to those who are on the premises by his consent.

4. There is privity of estate and of contract between the landlord and his tenant arising from the letting, but there is neither privity of estate nor privity of contract between the owner of premises and the persons whom the tenant may choose to make members of his family in any capacity. Such persons dwell in the premises demised neither by license nor by invitation of the owner.

5. Where there is neither privity of estate nor privity of contract, the owner of premises is not liable for injuries sustained by third persons unless, by invitation, express or implied, the owner induces them to come upon the premises.

6. The general rule is that one who is not a party to a contract cannot sue in respect of a breach of duty arising out of the contract.

7. The declaration averred that on May 23d, 1894, the plaintiff was a sister of the lessee and tenant of a certain house, and was living with her brother as a member of his family; that prior to May 23d, 1894, the lessee and the plaintiff called the attention of the landlord to

different things in the house that were in need of repairs, among which was a certain mantelpiece; that the landlord made a personal examination of the mantelpiece and assured the tenant and the plaintiff that the same was safe, but promised and agreed that he would immediately have the same repaired and put in proper order, but that the mantelpiece fell upon the plaintiff and injured her.  *Held—*

1. That the promise to the plaintiff in this respect was without consideration, and therefore did not reach the stage of a contract with her.

2. That the promise to the tenant having been made after the letting, was also without consideration and would not sustain an action on his part.

3. That if it be assumed that there was a contract with the tenant embodied in the original lease, and for that reason a valid contract as between the landlord and his tenant, such a contract will not sustain this action.

On demurrer to declaration.

Argued at November Term, 1897, before MAGIE, CHIEF JUSTICE, and Justices DEPUE, GUMMERE and LUDLOW.

For the plaintiff, *Paul R. Lefferts.*

For the defendant, *George P. Rust.*

The opinion of the court was delivered by

. DEPUE, J.   This is an action of tort to recover damages for personal injuries.   The declaration contains a single count, to which a demurrer was filed.

The declaration avers that on the 23d of May, 1894, the defendant was the owner and lessor of a certain house and lot, which said house was known as a tenement or dwelling-house, and was divided into floors and rooms, and in the room thereafter mentioned, known and used as a dining-room, there was a mantelpiece with a shelf on top, setting against the wall, which said mantelpiece was made of slate or marble, and was a fixture in said house, and was a part of the equipment and construction of the house, and was used by the persons occupying the same in connection therewith. The declaration then avers that, at the time above mentioned

(the 23d of May, 1894), one George Clyne was the lessee and tenant of said house, and hired the same of the defendant, with the mantelpiece, fixtures and appurtenances thereto belonging, and that the said George Clyne and the members of his household, of whom the plaintiff was one, used and occupied the said house and dining-room in which the said mantelpiece was located. The plaintiff then avers that she is a sister of George Clyne, the lessee and tenant of said house, and was living with her brother as a member of his household and family and acting for her brother in the capacity of housekeeper. The declaration then avers that, some time prior to the 23d of May, 1894, the said George Clyne and the plaintiff called the attention of the defendant to different things in the house that were in need of repairs, among which was the said mantelpiece; that the defendant made a personal examination and inspection of the same, and informed and assured the said George Clyne and the said plaintiff that the same was safe and that there was no danger of its falling, but promised and agreed that he would immediately have the same repaired. The declaration then avers that the defendant was bound in law, under his agreement with the said lessee, &c., to properly construct, repair, maintain and keep in repair and safe condition the said mantelpiece, &c., so that the said George Clyne and the members of his family and household could safely use and enjoy the said premises and the said dining-room without danger of bodily harm or injury from the falling of the said mantelpiece or any other fixtures which the said defendant had promised to repair and maintain. The declaration then charges that the defendant so negligently, carelessly and unskillfully constructed the said mantelpiece, and so negligently, carelessly and improperly allowed and suffered the same to remain out of repair, &c., that, by reason of the premises and the improper construction and fastening of the said mantelpiece, and the negligence, carelessness and indifference of the defendant in allowing the same to remain unrepaired and in an unsafe and dangerous condition, on the said 23d of May, &c., while the said plaint-

iff was residing in said house with her brother and acting as his housekeeper and engaged in the discharge of her household duties, in dusting the mantelpiece, without any fault, &c., on her part, the said mantelpiece, with the shelf fastened thereon, fell over upon and against the plaintiff, striking her with great force, knocking her down and inflicting certain injuries specified, whereby a right of action hath accrued to the plaintiff, &c.

These propositions may be considered as settled :

*First.* That an allegation of duty is insufficient ; that the facts and circumstances from which the duty arises must be set out in the declaration, and the sufficiencey of the pleading must be determined from the facts from which the duty is deduced. *Marvin Safe Co.* v. *Ward,* 17 *Vroom* 19 ; *Rader* v. *Township of Union,* 14 *Id.* 518 ; *Brown* v. *Mallett,* 5 *C. B.* 599 ; *Seymour* v. *Maddox,* 16 *Q. B.* 326.

*Second.* On demise of a house or lands there is no contract or condition implied that the premises shall be fit and suitable for the use for which the lessee requires them. *Murray* v. *Albertson,* 21 *Vroom* 167 ; *Naumberg* v. *Young,* 15 *Id.* 331, 344 ; *Mullen* v. *Rainear,* 16 *Id.* 520, 523 ; *Heintze* v. *Bentley,* 7 *Stew. Eq.* 562 ; *Jaffe* v. *Harteau,* 56 *N. Y.* 398 ; *Tayl. Land. & T.,* § 382.

*Bowe* v. *Hunking,* 135 *Mass.* 380, was a suit brought by the plaintiff, as administrator of his wife, to recover damages for personal injuries occasioned by a defective stairway in a tenement-house owned by the defendant, of which she and her husband were tenants. The premises were rented by the husband as tenant at will. There was a defect in the trend of the back stairs, and the wife coming down this flight of stairs in the evening, the trend gave way and she was thrown down and received the injuries complained of. The trial judge ruled, as matter of law, that the action could not be maintained. The court *in banc* sustained this ruling. Mr. Justice Field, in delivering the opinion of the court, said: "There is no warranty implied in the letting of an unfurnished house or tenement that it is reasonably fit for use.

The tenant takes an estate in the premises hired, and the persons who occupy by his permission or as members of his family cannot be considered as occupying by the invitation of the landlord, so as to create a greater liability on the part of the landlord to them than to the tenant. The tenant is in possession and he determines who shall occupy or enter the premises."

In *Robbins* v. *Jones*, 15 *C. B.* (*N. S.*) 220, the defendant was the owner of certain houses and premises and let them to certain persons, to wit, Smith Allen Jeffs and Augustus Jeffs. On the premises was a certain area adjoining and under a footway leading to the property of the defendant. Whether this footway was a private way to the houses or a public footway over the premises demised was a disputed question of fact. Robbins, the plaintiff, on the 10th of February, 1862, was lawfully passing over and along the footway, and by reason of its dilapidated, dangerous and unsafe condition he was thrown into the areaway and severely hurt and injured, from which injuries he died, and the suit was brought by his administratrix and resulted in a verdict for the plaintiff. This verdict was set aside and a nonsuit was entered. The Court of Common Bench, in its opinion delivered by Chief Justice Erle, used this language: "It is for the plaintiff to make out that the defendant has been guilty of the breach of some duty which he owed to the deceased, and that thereby the accident was occasioned. Whether he has done so may be considered under the following heads: (1) If the passage over the area be considered as a private way to the houses, then the reversioner is not liable, but the occupier. A landlord who lets a house in a dangerous state is not liable to the tenant's customers or guests for accidents happening during the term, for, fraud apart, there is no law against letting a tumble-down house, and the tenant's remedy is upon his contract, if any. In this case there was none, not that that circumstance makes any difference in our opinion." The other heads under which the case was considered are not relevant to this pleading.

In *Mullen* v. *Rainear, supra,* the plaintiff was tenant for years of the defendant. While he and his wife were carrying a stove on the balcony, which the tenant had a right to use in connection with the leased premises, the balcony broke down and by the fall the wife of the plaintiff was injured. The Supreme Court reversed a judgment in favor of the plaintiff below, on the ground that the court erred in refusing to instruct the jury that the landlady was not bound to make repairs to the balcony unless some agreement on her part was shown. Mr. Justice Dixon, in delivering the opinion of the court, said : " There is no implied duty on the owner of a house which is in a ruinous and unsafe condition, to inform a proposed tenant that it is unfit for habitation, and no action will lie against him for an omission to do so, in the absence of express warranty or deceit. An obligation on the part of the landlord will not be implied that he shall make substantial repairs because of the premises being in a dangerous condition."

The exemption of a landlord from liability for injuries sustained by a tenant by reason of the ruinous condition of the demised premises, where there is neither a contract nor fraud, applies as well to members of the family of a tenant as to those who are on the premises by his consent. " The subtenant, servant, employe, or even customer of the lessee, is under the same restriction as the lessee himself, because, entering under the tenant's title and not by any invitation, express or implied, from the owner, they assume a like risk." *Tayl. Land. & T.* (*7th ed.*), § 175 *a.*

There being no duty, such as is counted on in this declaration, imposed upon a landlord as the owner of the premises, the declaration must be inspected to ascertain the existence of any contract from which such a duty would arise. The declaration charges that the defendant made a personal examination of the mantelpiece and assured the said George Clyne and the said plaintiff that the same was safe, but promised and agreed that he would immediately have the same repaired and put in proper order. The promise to the plaintiff

in this respect was without consideration, and therefore did not reach the stage of a contract with her. The promise to the tenant, Clyne, having been made after the letting, was also without consideration and would not sustain an action on his part. But if it be assumed that there was a contract with the tenant embodied in the original lease, and for that reason a valid contract as between the landlord and his tenant, such a contract will not sustain this action. The general rule is that one who is not a party to a contract cannot sue in respect of a breach of duty arising out of the contract. *Marvin Safe Co.* v. *Ward, supra.*

The leading case on this subject in the English courts is *Winterbottom* v. *Wright,* 10 *Mees. & W.* 109. In that case A contracted with the postmaster-general to provide a mail-coach to convey the mail-bags along a certain line, and B contracted to horse the coach along the same line. B hired C to drive the coach. It was held that C could not maintain an action against A for an injury sustained by him while driving the coach, by its breaking down because of a defect in its construction. The ground of decision was that the defendant's duty with respect to the sufficiency of the coach arose from his contract, and there being no privity of contract between him and the plaintiff, he was under no obligation to the plaintiff on which the latter could sue. The cases in the same line of decision and to the same effect are cited in the opinion of the court in *Marvin Safe Co.* v. *Ward,* 17 *Vroom* 23, 24, 25.

The cases cited by the plaintiff's counsel do not touch the cause of action spread upon the face of the declaration.

In *Payne* v. *Rogers,* 2 *H. Bl.* 350, the suit was by a third person, and not the tenant, for an injury sustained by stepping through a hole in the pavement, owing to some plates or bars being out of repair. The action was against the landlord and resulted in a verdict against him. A motion for a new trial was based on the contention that the action ought to have been brought against the actual occupier of the house and not against the landlord. The rule was refused on the ground that, though the tenant was, *prima facie,*

bound to repair, and therefore liable, yet if he can show that the landlord is to repair, the latter is liable for the neglect to repair; and the defence appears to have been maintained on the ground of avoiding circuity of action, as the tenant, if recovery was had against him, would have remedy over against the landlord. The case, as will presently be seen, has been criticised in the English courts.

In *Russell* v. *Shenton*, 3 *Q. B.* (*N. S.*) 449, the declaration stated that the plaintiff, before and at the time, &c., was lawfully possessed of a dwelling-house and premises whereon the plaintiff and his family dwelt; that defendant, before and at the time, &c., was the owner and proprietor of divers drains and sewers situate and being in and upon certain premises belonging to the defendant, near to and adjoining the said dwelling-house of the plaintiff, into and through which drains and sewers divers quantities of soil, filth and water from time to time passed and flowed, and by reason thereof, the defendant, as such owner, ought from time to time well and sufficiently to have kept cleansed and repaired said drains and sewers, and prevented the soil, filth, &c., from unduly accumulating therein and from running and proceeding therefrom unto the plaintiff's dwelling-house; nevertheless, &c., the defendant, &c., wrongfully suffered the said drains and sewers to become foul and in bad repair, and also wrongfully suffered divers large quantities of soil, &c., to accumulate therein, and wrongfully kept and continued said drains and sewers so foul and in bad repair, &c., that, by reason thereof, &c., large quantities of the said soil ran and flowed therefrom into the said dwelling-house, &c., and thereby caused divers unwholesome smells, &c., and the walls of plaintiff's dwelling-house became decayed, &c., to the damage, &c. This declaration was demurred to and judgment thereon was given for the defendant. Lord Chief Justice Denman, in delivering the opinion of the court, said: "This was an action for a nuisance to the plaintiff's lands by reason of the foul state and bad repair of drains of which the defendant is the owner and proprietor, situated on lands adjoining the plaint-

iff, and which the defendant, as such owner thereof, ought to repair. The declaration charges no act on the defendant, either of making or continuing the nuisance. It. merely states him to be the owner and proprietor of the drains, and seeks to cast upon him, as such, a legal obligation to make good the damage ensuing to his neighbor from their foul condition. There is no authority in support of this claim, but several against it."

Payne *v.* Rogers was commented on, Lord Denman saying : " The language of the court is not very clear in that case, but if the marginal note may be taken as a fair representation of the effect of that decision, it will be hard to reconcile with *Cheetham* v. *Hampson,* 4 *T. R.* 318."

In *Todd* v. *Flight,* 9 *C. B.* (*N. S.*) 377, the declaration alleged that the defendant was owner and possessed of a certain building and a stack of chimneys parcel thereof near to the plaintiff's premises ; that the chimneys were then and from thence continually, &c., in a dilapidated state and in danger of falling; that the defendant let the premises in that state to one Batt, and kept and maintained and continued to keep and maintain the same in such dangerous condition until they fell and damaged the plaintiff's premises. The suit was brought by the owner of adjoining premises, and the allegation was that the defendant had let his building, &c., to a tenant in a ruinous and dangerous condition, whereby they fell upon and injured the plaintiff's house. The action was sustained on the ground that the defendant let the house when the chimneys were known by him to be ruinous and in danger of falling. Judgment was given for the plaintiff. It will be perceived that the action in this case was by the owner of adjoining premises, and that the liability of the owner for damages arose from the fact that when he leased the premises they were already a nuisance. The foundation of the suit was the duty which the owner of the premises owed to the owner of adjoining premises—a duty arising independent of contract, from the obligation of which the owner could not discharge himself by showing that the premises at the time

when, &c., were let to a tenant—the chimneys being known by him to be ruinous and in danger of falling at the time of the letting.

The cases cited above are all cases in which actions were brought by third persons having no connection with the occupation of the premises demised.

In *Ingwersen* v. *Rankin*, 18 *Vroom* 18, the suit was brought by a tenant against his landlord. The plaintiff had leased of the defendant the basement of a building, and the suit was brought for damages for injuries suffered by reason of the improper management of the remainder of the building—from defects existing in the pipes in the saloon above the basement. The saloon had been leased by the defendant to one M. before the plaintiff's term commenced. The lease to M. expired May 1st, 1877, and defendant gave him a new lease for the saloon for a term extending beyond the plaintiff's term. By both of these leases M. had covenanted to keep the premises 'leased to him in repair. The injury sustained by the plaintiff did not arise from the condition of the premises demised to him, and he had no control over that part of the building in which the defective water-pipes were located. This court held that if the defective water-pipes were part of the premises demised to the plaintiff, the defendant's liability would be measured by his contract with the plaintiff, but the pipes being located without the premises demised to the plaintiff, they constituted a nuisance for which a liability to the plaintiff arose on the part of him who originally created it and of him who maintained it. The action was sustained on the principle that if one creates a nuisance on his own premises, and thus becomes liable for its erection and also for its maintenance, he cannot escape the latter liability by demising the premises whereon the nuisance is, and that the covenant of M. to repair did not exonerate the landlord from liability. It will be observed that in the case just cited the injury complained of did not result from the condition of the premises demised to the plaintiff and the want of reparation. It arose from a cause extraneous to the premises demised. The deci-

sion in that case in no sense trenched upon the doctrine laid down in Murray *v.* Albertson, Naumberg *v.* Young, Mullen *v.* Rainear and Heintze *v.* Bentley.

But if the action could have been maintained by the tenant under the facts set out in this declaration, it by no means follows that this plaintiff could maintain this action. There is privity of estate and of contract between the landlord and his tenant arising from the letting, but there is neither privity of estate nor privity of contract between the owner of premises and the persons whom the tenant may choose to make members of his family in any capacity. Such persons dwell in the premises demised neither by license nor by invitation of the owner. Where there is neither privity of estate nor privity of contract, the owner of premises is not liable for injuries sustained by third persons by reason of the condition of the premises, unless by invitation, express or implied, the owner induces them to come upon the premises. *Phillips* v. *Library Company,* 26 *Vroom* 307.

There should be judgment on the demurrer for the defendant.