MARCO POLO, ADMINISTRATOR OF VINCENZO FALCONE, DEFENDANT IN ERROR, v. PALISADE CONSTRUCTION COMPANY, PLAINTIFF IN ERROR.

Submitted January 7, 1908—Decided June 15, 1908.

1. Plaintiff's intestate, while employed by the defendant as a laborer in a rock excavation for a sewer, was killed by the accidental explosion of a blast which had previously failed to explode, and was being prepared for removal by another employe, skilled and careful, in such work, and entrusted with that duty. In an action by the administrator against the employer for damages by reason of such death—*Held*, that under the circumstances of the case it was a question for the jury (1) whether the employer was guilty of negligence in putting deceased to work in a dangerous place, or undertaking the extraction of the charge while deceased was working in the vicinity without withdrawing him to a place of safety; (2) whether deceased assumed the risk of the explosion in question; (3) whether he was guilty of contributory negligence.
2. *Held further*, that the negligence, if any, causing the injury and death was not that of a fellow-servant.
3. *Held further*, that substantial pecuniary injury to next of kin by reason of the death appearing in the evidence, there was no error in refusing to nonsuit or charge that nominal damage only could be recovered.

On error to Hudson County Circuit Court.

For the plaintiff in error, *Collins & Corbin*.

For the defendant in error, *J. Philip Dippel* and *Alexander Simpson*.

The opinion of the court was delivered by

PARKER, J. The plaintiff below is the administrator of Vincenzo Falcone, deceased, who, while employed by the Palisade Construction Company as a laborer in the excavation through rock of a sewer trench, was killed by the explosion of a blasting charge. In a suit brought under the Death act, judgment of $400 was recovered against the employer in the Hudson Circuit Court and is now before us on writ of error.

The material facts connected with the injury, which caused the death of Falcone, are as follows:

The construction company, as already stated, was engaged in the excavation of a sewer trench through rock, requiring blasting, from time to time, with dynamite. One charge failed to explode as intended, and the company's foreman, called "Big Jim," an Italian, but a man of long experience in the use of dynamite, in the course of his duty proceeded to uncover the charge, so as to remove it in preparation for a new one. The tools he used were a "scraper" and a "swab stick," being those habitually used by all skilled workmen for such a purpose, and the method adopted was the usual one. There is no question but that "Big Jim" was a skilled and careful man and was working according to the approved method; but while he was thus at work preparing for the new charge, the old charge unexpectedly exploded, killing "Big Jim" himself and also the plaintiff's intestate, who was at work in the trench, but "down in the deep work" on a level some sixteen feet lower, and eighteen feet away from the bank dividing the two levels. The plaintiff's intestate had been working on the sewer about a week, but had worked before that on sewers, and the unexploded blast had been in place four days, though "Big Jim" was first informed of it on the day of the accident. On the plaintiff's case it appeared that plaintiff's intestate had been told by the "boss" that there was a loaded blast there.

A motion to nonsuit was made on the grounds, among others—*first,* that no negligence of the defendant was shown; *secondly,* that the negligence, if any, was that of a fellow-servant; *third,* that deceased assumed the risk; *fourth,* that he was guilty of contributory negligence; *fifth,* that no pecuniary loss to next of kin had been shown. Two other grounds urged were that there was no proof either that "Big Jim" was incompetent or that improper tools were supplied by the master. As to these defendant was clearly right, but as plaintiff's case was rested on the theory of putting deceased to work in a dangerous place or creating the danger after he was at work there without giving any warning, they

need no discussion here. The motion to nonsuit was denied and exception entered. On the defendant's case evidence was given tending to show that deceased had been warned generally of the existence of the unexploded blast and had told one of his fellow-laborers on the morning of the accident, "Frank, here is a loaded blast, we have got to look out."

At the conclusion of the evidence a motion to direct a verdict for defendant on the same grounds as were urged for a nonsuit was also made and denied, and the case submitted to the jury who found as already stated. The assignments of error present the same points as those discussed in the motion for a nonsuit and for a direction.

Whether the deceased was put to work by the master in a dangerous place, or the place where he was at work made dangerous by the master, was, in our judgment, clearly a proper question for submission to the jury. If the work of uncovering an unexploded blast was inherently dangerous, and defendant knew or should have known it, as the jury was fully justified in finding on the evidence, then its action in requiring deceased to work within range while "Big Jim" was attempting to prepare for a new blast, and without warning deceased of the danger, was undoubtedly such as a jury might properly consider negligent.

Nor can the doctrine of fellow-servant be invoked in this case, for, on the theory just suggested, it was not the negligence of "Big Jim" in doing his work, but the doing of it at all, that constituted the danger to other employes, and the duty of the employer to take care to guard his servants from unnecessary risks would seem to require an avoidance of such work as this in the neighborhood of other workmen. It would have been a simple matter to withdraw them till all danger was over, as is always done when a blast is to be intentionally exploded. And if "Big Jim" was entrusted with discretion as to the time of doing this work, he acted in choosing that time as the representative of the master, and for his negligence in that regard the master would be liable. *Steamship Company* v. *Ingebregsten,* 23 *Vroom* 400; *Burns* v. *Telegraph Company,* 41 *Id.* 745.

The question of assumption of risk by deceased is more difficult, but resolves itself in our view against the defendant below. If the deceased knew of a special danger involved in working so close to the unexploded blast while it was being uncovered, or if such danger was obvious or ascertainable by the exercise of reasonable care on his part, he assumed it and his administrator could not recover. That he knew of the existence of the unexploded charge, and of the danger in case it was exploded, is clear, but this is not the same as saying that he knew the danger involved in the work that "Big Jim" was doing or that it was obvious to him or discoverable by using due care. There is nothing to show that he had ever seen or heard of such an operation as "Big Jim" was engaged in or that he had any special reason to fear explosion because of that operation. And the moral certainty that "Big Jim" himself would be injured or killed by an explosion under those circumstances, as in fact happened, may well have led deceased to believe that no special danger inhered in the work, especially as he was some distance away on a much lower level, and was killed not directly by the explosion but by a mass of debris falling on him.

The testimony above quoted, as to what was said to and by deceased about the loaded blast, was before the jury, who had to pass on its meaning on indicating or failing to indicate knowledge of the danger on his part, and the court below correctly charged them that "if he knew, or had reason to know, that the place where he was going to work that morning was a dangerous one to work in under the circumstances, and if they believed that he knew, at the time he went to work there, that the man who was known as 'Big Jim,' and who himself was killed, was endeavoring to take this charge of dynamite out, and that he had reasonable cause to believe that might result in an explosion, or might result in injury or death to him, and he, nevertheless, saw fit to go to work there, he could not come into court and ask for damages, and, if he could not, neither could his administrator, the injury having resulted in his death."

We think that this question of assumption of risk was

properly referred to the jury, and that the instructions above quoted correctly stated the law applicable to the case.

As to contributory negligence, nothing appeared which is not covered by the discussion of assumption of risk, and, if any fair question was raised on this score, it was proper for consideration by the jury. *Grimaldi* v. *Lane,* 177 *Mass.* 565.

Lastly, it was maintained that no proof had been submitted to show any pecuniary damage to the next of kin, and that there should therefore have been a nonsuit, or the verdict for the plaintiff, if any, should have been restricted by the court in its charge to a nominal amount.

The evidence showed that deceased had a father and mother in Italy; that he earned $1.75 a day; that on one occasion his parents had sent a message to him asking for money to help support them, and that $20 had then been remitted. This would seem to be sufficient to justify the jury in finding the existence of a reasonable expectation of pecuniary benefit by the continuance of his life, of which his parents had been deprived by his death, and which would justify more than a nominal verdict. *Batton* v. *Public Service Corporation, ante p.* 857.

No prejudicial error appearing in the record, the judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, PARKER, BERGEN, BO-GERT, VREDENBURGH, VROOM, GREEN, J.J. 7.

*For reversal*—THE CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, GRAY, DILL, J.J. 6.