CASIMO CETOFONTE, ADMINISTRATOR, &c., OF GIACINTO CETOFONTE, DECEASED, DEFENDANT IN ERROR, v. CAMDEN COKE COMPANY, IMPLEADED WITH PUBLIC SERVICE CORPORATION OF NEW JERSEY, PLAINTIFF IN ERROR.

Submitted December 6, 1909—Decided February 28, 1910.

1. Where the gravamen of an action is the master's failure to perform a duty to warn his servant of an unusual danger of the place of work, an express allegation of the master's duty is unnecessary and will not sustain or aid a pleading. The facts and circumstances from which the duty arises must be set out in the declaration, and it is sufficient if the law implies a duty from the facts and circumstances stated.

2. Where fair-minded men might honestly differ as to conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury.

3. The principle that an employer is not liable for failure to warn an adult employe of a risk naturally incident to the employment, in the absence of notice of the ignorance of the workman, has no application where the latter is injured as the result of a latent danger in the place of work not naturally incident to the employment.

4. The master is bound to disclose to the servant the latent dangers of which he has knowledge, and of which the servant has no

knowledge, and which are not discoverable by the exercise of reasonable care upon the part of the servant.

5. Under section 140 of the Practice act (*Pamph. L.* 1903, *p.* 575), which provides that the written answers to written interrogatories submitted before trial upon any matter material to the issue shall be evidence in the action if offered by the party proposing the interrogatories, but not otherwise, the action of the trial judge in permitting the answer to one of several interrogatories to be offered and read in evidence without admitting the answers to the remaining interrogatories cannot be said to be erroneous when there was no showing nor offer to show, either in the trial court or in the reviewing court, that the remaining answers were material to the issue or that they tended to explain, qualify or limit the answer admitted.

6. Under the act of March 3d, 1848 (*Gen. Stat., p.* 1188), an administrator appointed in New Jersey may maintain an action within the state for damages for the death within the state of an alien caused by the wrongful act or neglect of another, despite the fact that the decedent's widow, his sole beneficiary, was at the time of such death, and still is, at the time of the commencement of the action, a non-resident alien.

---

On error to the Supreme Court.

For the plaintiff in error, *Edward Ambler Armstrong, Lefferts S. Hoffman* and *Leonard J. Tynan.*

For the defendant in error, *William C. French.*

The opinion of the court was delivered by

TRENCHARD, J.   The plaintiff's intestate, a common laborer, was employed in the plant of the Camden Coke Company, wheeling coke. He was an ignorant Italian, nineteen years of age, and had but little understanding of the English language.

'  The coke plant was a large one. Several tracks formed of steel rails extended between the place where decedent and other employes worked and the place where the drinking water for the men was kept. Some of these rails were heavily charged with electricity for the purpose of operating a device known as a "pusher." Some of the rails thus charged were guarded by a covering of boards; some were not guarded at all. On the ninth day of his employment the decedent at-

tempted to cross these rails for the purpose of getting some water, as was the custom of the men, and stepped upon an unguarded rail and was killed.

This suit was brought under the Death act against the coke company and the Public Service Corporation of New Jersey to recover for the pecuniary injury to his widow and next of kin.

The trial at the Camden Circuit resulted in a verdict of the jury in favor of the plaintiff and against the defendant the Camden Coke Company, and this writ of error, sued out by the company, brings up for review the judgment entered thereon.

The first assignment of error argued is that the declaration is insufficient in law. We think not. The gravamen of the action is the defendant's failure to perform a duty to warn the plaintiff's intestate of an unusual danger of the place of work. The defendant's argument is that there was no allegation of lack of warning. We think there was. In support of the contention we are pointed only to that part of the declaration in which the plaintiff has chosen to define the defendant's duty. But an express allegation of the master's duty is unnecessary and will not sustain or aid a pleading. The facts and circumstances from which the duty arises must be set out in the declaration, and the pleading is sufficient if the law implies a duty from the facts and circumstances stated. *Clyne* v. *Helmes*, 32 *Vroom* 358; *Marvin Safe Co.* v. *Ward*, 17 *Id.* 19; *Breese* v. *Trenton Horse Railroad Co.*, 23 *Id.* 250. Now, in that part of the declaration which alleges what the defendant omitted to do it avers that the defendant negligently and carelessly permitted a certain steel track heavily charged with electricity to be insufficiently and negligently guarded *"and without any warning of its dangerous nature or any notification thereof"* to the decedent, kept and maintained the heavily-charged track in a negligent and careless manner, so that while the decedent was lawfully passing across the defendant's yard he came in contact with the track, without any fault on his part, and was killed. Plainly, therefore, the declaration averred failure to warn.

The second assignment of error argued is upon the refusal of the trial judge to nonsuit the plaintiff. The ground taken was that no liability of the defendant was shown by the testimony. The contention now is that it was not shown that the decedent was ignorant of the danger, nor that the defendant failed to warn him. But we think that fair-minded men might honestly have drawn the conclusion from the uncontroverted facts, both that the decedent was ignorant of the danger and that he was not warned of it. Both questions were, therefore, properly submitted to the jury. *Nolan* v. *Bridgeton and Millville Traction Co.*, 45 *Vroom* 559.

It is further contended, however, that the duty to warn the plaintiff's intestate would only arise when the defendant knew that the plaintiff's intestate did not know of the danger. In the argument the defendant relies upon the case of *Murphy* v. *Rockwell Engineering Co.*, 41 *Vroom* 374, in which it was held that the fact that an employer did not warn an adult employe of a risk which was naturally incident to the employment, will not render the former responsible to the workman for an injury received by him because of his ignorance of the risk, in the absence of evidence that the employer had notice of such ignorance. But, as will be seen, the principle there stated is limited to risks naturally incident to the employment. The immunity of the master in such cases rests upon the contract of hiring. The master says to the servant: "You understand fully the nature of the employment and the danger attending it; will you enter it?" The servant says, "I accept it," and the law implies that he accepts it with all the risks incident to it, without regard to the magnitude of the danger. *Foley* v. *Jersey City Electric Light Co.*, 25 *Id.* 411. But in this case decedent was hired as a common laborer and was employed in loading coke on cars. His death was not due to danger naturally incident to his employment. It was rather the result of a latent danger growing out of the unsafe condition of his place of work. The danger to him, and which caused his death, consisted of rails heavily charged with electricity extending across the yard of the defendant and so negligently unguarded that persons lawfully there

were in danger of being killed on passing over them. While the decedent assumed all the risks which were necessarily incident to his employment, or which were obvious or known to him, he did not assume the risk of injury due to the failure of the defendant to exercise reasonable care in furnishing him a safe place to do his work. *McDonald* v. *Standard Oil Co.*, 40 *Id.* 445; *Conway* v. *Furst*, 28 *Id.* 645. If in the place of work there is an unusual danger which is not obvious, it is the duty of the master to warn those who are to incur it of its existence. *Paulmier* v. *Erie Railroad Co.*, 5 *Id.* 151. That the rails in question were harmless in themselves when not charged with electricity, and that they were dangerous when charged with a deadly current, is quite clear. It is equally clear that there is no difference in appearance between a charged and an uncharged rail. It appears, therefore, that the rails were not an obvious danger. It necessarily follows that the principle that an employer is not liable for failure to warn an adult employe of a risk naturally incident to the employment, in the absence of notice of the ignorance of the workman, has no application to this case where the decedent was killed as the result of a latent danger in the place of work and not naturally incident to the employment. Thus, in an interesting case in California (*Baxter* v. *Roberts*, 44 *Cal.* 187), the evidence was that B., who was a carpenter, was employed by R. to go in a boat upon a submerged lot owned by him, and do certain work of his trade. While there at work, a shot was fired from a house on an adjacent lot, which wounded B., hence his action for damages. It appeared that R. knew his possession of the lot was resisted, and a resort to arms was imminent at any moment. He did not inform B. of this fact, and the latter had no reason to believe that he was going into danger when employed to do the work. It was held that R. was liable, for the reason that the concealment of facts, or the failure to state them by the employer to the employe, which would tend to expose any hidden and unusual danger to be encountered in the course of the employment, to a degree beyond that which the employment

fairly imports, renders the employer liable for injuries resulting therefrom to the employe.

The third assignment of error argued challenges the propriety of the charge of the court to the effect that if there existed upon the premises of the defendant where decedent was employed a latent danger not apparent to a man of ordinary observation, it was the duty of the defendant to warn the decedent of such danger. The criticism is that it is only when the master knows, or by reasonable inspection could discover the latent danger, that the duty to warn arises. But in this case the danger which was hidden and concealed from the servant was well known to the master. It had been installed by the defendant upon its premises and was used in a certain department of the defendant's work. Since the principle invoked had no application to the case, it, of course, was not charged.

The fourth assignment of error argued is that the court wrongfully permitted the answer to one of several interrogatories to be put in evidence.

It appears that, before trial, the plaintiff served upon both defendants several written interrogatories in pursuance of section 140 of the Practice act. *Pamph. L.* 1903, *p.* 575. That section provides that after an action is at issue either party may serve on the adverse party written interrogatories upon any matter material to the issue, and the answer shall be evidence in an action if offered by the party proposing the interrogatories, but not otherwise.

Both defendants answered in writing.

At the trial the plaintiff offered in evidence and read one of the several answers made by the Camden Coke Company. The defendant objected to the admission of that answer unless the answers to all of the interrogatories submitted and answered were put in. There was no showing nor offer to show, either in the court below or here, that the remaining answers were material to the issue or that they tended to explain, qualify or limit the answer admitted. Clearly, in the absence of such showing, the action of the trial judge cannot be said to be erroneous. What the result might have been in a dif-

ferent situation we are not called upon to determine. Our conclusion is not inconsistent with the rule laid down in *Lanahan* v. *Lawton,* 5 *Dick. Ch. Rep.* 276; affirmed in this court, 5 *Id.* 796, in which certain extracts from an alleged deposition not before the court were excluded.

The last assignment of error to be considered is that "Catharine Cetofonte, the beneficiary for whom the recovery was sought, was a non-resident alien not entitled to the benefits of the act."

The question is sought to be raised by an exception to the refusal to nonsuit.

Assuming but not deciding that the question so presented is properly before us, we think that there is no merit in the defendant's contention.

It is true that the proofs showed that Catharine was the wife of the decedent, and that they were citizens of Italy and married there in February, 1905; that eight months later decedent came to the United States, his wife remaining in Italy; that he sent her money from time to time; that he was killed May 27th, 1906. The decedent was therefore an alien, and his wife, whom it seems to be conceded was his sole beneficiary, was a non-resident alien.

Section 1 of the act of March 3d, 1848 (*Gen. Stat., p.* 1188), provides that whenever death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in any such case the person who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured. Section 2 provides that such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount received shall be for the exclusive benefit of the widow and next of kin of such deceased person.

This suit is brought by the administrator of decedent appointed by the surrogate of Camden county, in this state, the person designated by the statute to bring the action. He is a

mere trustee for the distribution of the fund recovered to the widow and next of kin in the method pointed out by the statute, the fund being no part of the estate. *Gottlieb* v. *North Jersey Street Railway Co.,* 43 *Vroom* 480. The cause of action created by the statute enures to the widow and next of kin as a vested right. *Cooper* v. *Shore Electric Co.,* 34 *Id.* 558.

The question whether an administrator appointed in this state may maintain such action within this state for the death within this state of an alien where the beneficiary was and is a non-resident alien has never been decided in the courts of our state. It was apparently involved but not argued or decided in *Polo* v. *Palisade Construction Co.,* 46 *Vroom* 873.

There is much conflict in the cases arising in other jurisdictions under somewhat similar statutes, both in this country and England, upon this question.

The great weight of authority, however, supports the proposition that non-resident aliens are not excluded from among the beneficiaries. The leading case is *Mulhall* v. *Fallon,* 176 *Mass.* 266. That is followed by *Kellyville Coal Co.* v. *Petraytis,* 195 *Ill.* 215; *Szymanski* v. *Blumenthal,* 3 *Penn.* (*Del.*), 558; *Renlund* v. *Commodore Mining Co.,* 89 *Minn.* 41; *Bonthron* v. *Phoenix Light and Fuel Co.,* 8 *Ariz.* 129; *Romano* v. *Capital City Brick Co.,* 125 *Iowa* 591; *Cleveland, C. C. & St. L. R. R. Co.* v. *Osgood,* 36 *Ind. App.* 34; *Pocahontas Collieries Co.* v. *Rukas,* 104 *Va.* 278; *Alfson* v. *Bush Company,* 182 *N. Y.* 393; *Pittsburg, C. C. & St. L. R. R. Co.* v. *Naylor,* 73 *Ohio St.* 115; *Trotta* v. *Johnson,* 121 *Ky.* 827; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Fajardo,* 74 *Kan.* 314; *Petek* v. *American Smelting Co.,* 154 *Fed. Rep.* 190; *Vetaloro* v. *Perkins,* 101 *Id.* 393; *Davidsson* v. *Hill,* 1901, 2 *K. B.* 606, disapproving *Adam* v. *British & F. S. S. Co.,* 1898, 2 *Q. B.* 430.

The cases holding the contrary view, *i. e.,* that non-resident aliens are excluded as beneficiaries, are *Deni* v. *Pennsylvania Railroad Co.,* 181 *Pa.* 525; *Maiorano* v. *Baltimore and Ohio Railroad Co.* 216 *Id.* 402; *McMillan* v. *Spider Lake Saw Mill and Lumber Co.,* 115 *Wis.* 332; *Brannigan* v. *Union*

*Gold Mining Co. (Circuit Court),* 93 *Fed. Rep.* 164; *Adams* v. *British & F. S. S. Co., supra,* which latter case, as we have pointed out, has been disapproved in England. The reasoning upon which these latter cases rest seems to be that—*first,* the laws of a country have no intrinsic force *proprio vigore* beyond its territorial jurisdiction and limits; *second,* statutes generally apply to those only who owe obedience to the legislature which enacts them, and whose interests it is its duty to protect, and *third,* it is usual in conceding or granting rights to non-resident aliens to make express mention of them.

But we think the better reason, as well as the greater weight of adjudged cases, forbids that non-resident aliens be excluded, by interpretation, from among the beneficiaries designated in the statute. The decedent, though a foreigner, not being an alien enemy, if he had survived the injury, might have maintained an action therefor, if not otherwise specially disabled by law. 2 *Cyc.* 107. The wife, having a vested right in the cause of action resulting from his death, should not be excluded as a beneficiary, though a non-resident alien. The injury to her may well be the same as if she were a resident. The legislature had power to include non-resident aliens, and they are within the natural and ordinary import of the language employed. Neither the context nor the corrective purpose of the statute suggests any reason for a restrictive interpretation. The act is, in its highest sense, remedial, and is entitled to receive the liberal construction which appertains to such statutes. *Haggerty* v. *Central Railroad Co.,* 2 *Vroom* 349; *Gottlieb* v. *North Jersey Street Railway Co., supra.* The question of giving a statute intrinsic force *proprio vigore* beyond the territorial jurisdiction of the state is not involved. The act merely removes a common-law obstacle to recovery for a wrongful act. It merely provides a remedy for a wrong, committed within the state, by those within the state and subject to its authority, to others within its jurisdiction and entitled to its protection, whereby injury is done to still others within or without its jurisdiction. Had the legislature intended to restrict recovery to a resident widow or resident next of kin or both, or to a widow and next

of kin who are citizens of the United States, it would have so said.

Moreover, our statute has been under consideration in the United States courts. In *Dennick* v. *Central Railroad Co.,* 103 *U. S.* 11, in denying a contention that the provisions of the act that "every such action shall be brought by and in the names of the personal representatives of such deceased," limited the right of action to a personal representative appointed in the state, it was said: "The advocates of this view interpolate into the statute what is not there.    *    *    * The statute says the amount recovered shall be for the exclusive benefit of the widow and next of kin. Why not add here, also, by construction, 'if they reside in the State of New Jersey?' It is obvious that nothing in the language of the statute requires such a construction. Indeed, by inference, it is opposed to it. The first section makes the liability of the corporation or person absolute where the death arises from their negligence. Who shall say that it depends upon the appointment of an administrator within the state?" In *Hirschkovitz* v. *Pennsylvania Railroad Co.,* 138 *Fed. Rep.* 438, the court, construing our statute, held that a non-resident alien who is next of kin to the person killed is entitled to the benefit of a statute giving a right of action for the death of a person caused by the wrongful act or negligence of another. It will be seen, therefore, that the United States courts, in the construction of our statute, are in harmony with the views here expressed.

The judgment of the court below will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL, CONGDON, JJ. 16.

*For reversal*—None.