BERTHA ROSENBERG AND SAMUEL ROSENBERG, PLAIN-TIFFS-RESPONDENTS, v. REBECCA KRINICK, DEFEND-ANT-APPELLANT.

Submitted May 15, 1936—Decided July 17, 1936.

Before BROGAN, CHIEF JUSTICE, and Justices CASE and PERSKIE.

For the appellant, *George L. Burton.*

For the respondents, *David T. Wilentz.*

The opinion of the court was delivered by

PERSKIE, J. Is a landlord liable to his tenant, in tort, for failure to carry out his promise to repair the leased premises, when that promise was made subsequent to the letting and was not supported by a new consideration?

Defendant was the owner of a two-family dwelling house in New Brunswick, New Jersey. She rented the lower floor to the plaintiff and occupied the upper floor herself. In the rear of each apartment was a porch completely enclosed by a railing. Although there is some proof that plaintiff occasionally permitted defendant to use her porch to hang out clothes to be dried, nevertheless, it is rather clear that the porches were not common porches; they were only for the use of the tenant in the apartment to which they were appurtenant.

On March 19th, 1934, Bertha Rosenberg, while on the rear porch of her apartment for the purpose of emptying a pail of water, leaned against the railing of the porch. The railing gave way and plaintiff was precipitated to the ground some few feet below and sustained injuries for which she and her husband recovered in the amounts already stated.

Plaintiffs admit that there was no agreement to repair the premises at the time of the letting. Their alleged right of action is made to rest upon a promise so made by the landlord a short time, approximately one month, before the accident.

The trial judge denied defendant's motion for a nonsuit, and in charging the jury, among other things, said:

"Now, as stated, the case is a very, very sharp one. It rests entirely upon this alleged conversation and promise that Mr. Rosenberg had with Mrs. Krinick. If that testimony of Mr.

Rosenberg is true, and Mrs. Krinick did promise to repair, then, of course, the Rosenbergs could rely upon that promise to repair for a reasonable length of time. If that length of time, however, became unreasonably long so that the tenants would have the right to say, well, even though the landlord did promise to repair she has not kept her promise and does not intend to, then, after that time goes by, the tenant takes the risk of the defective condition.

"The case, as I have stated, depends upon the truthfulness of the story which Mr. Rosenberg relates about the promise of Mrs. Krinick to have the porch rail fixed."

It is argued for the defendant that the landlord is under no obligation to repair rented premises unless he contracts to do so at the time of the renting; that a subsequent promise to repair cannot furnish the basis of a cause of action unless supported by a new consideration; and that no such consideration exists here for the defendant's promise, if any she made, and, therefore, the trial court committed reversible error in refusing to grant a nonsuit and in charging the jury as hereinabove quoted.

The general rule is, of course, that the landlord is under no duty to repair leased premises in the absence of any promise so to do; there is no implied contract or consideration that the premises are or shall be fit and suitable for the use of the tenants. *Bolitho* v. *Mintz,* 106 *N. J. L.* 449, 451; 148 *Atl. Rep.* 737; *Siggins* v. *McGill,* 72 *N. J. L.* 263; 62 *Atl. Rep.* 411; *Reilly* v. *Feldman,* 103 *N. J. L.* 517; 138 *Atl. Rep.* 307. The basic and elementary reason for the rule is that ordinarily the landlord, once the tenant takes possession, has no right of entry nor any control over the leased premises. But this general rule is not without exceptions. If, at the time of making the lease, the landlord promised to repair and there is consideration for that promise, and damage ensued which was chargeable to the lack of repair, under these circumstances, liability exists. If, moreover, the defective condition is a part of the premises used in common by several tenants the law imposes on the landlord, who, under these circumstances has control and a right of entry, the duty of

using reasonable care to maintain the common premises in a reasonably safe condition. See *Johnson* v. *The Lembeck and Betz Eagle Brewing Co.,* 75 *N. J. L.* 282; 68 *Atl. Rep.* 85; *affirmed,* 77 *N. J. L.* 617; 72 *Atl. Rep.* 1118; *Barthelmess* v. *Bergamo,* 103 *N. J. L.* 397; 135 *Atl. Rep.* 794; *Peterson* v. *Zaremba,* 110 *N. J. L.* 529, 531; 166 *Atl. Rep.* 527; *Perry* v. *Levy,* 87 *N. J. L.* 670; 94 *Atl. Rep.* 569; *LaBrasca* v. *Hinchman,* 81 *N. J. L.* 367; 79 *Atl. Rep.* 885; *Hahner* v. *Bender,* 101 *N. J. L.* 102; 127 *Atl. Rep.* 202.

Under the proofs here exhibited a different problem is involved. The porch was not a common porch; the promise to repair was not made at the time of the letting but subsequent thereto. Thus we approach the determination of the question first stated. Is the landlord liable for the resultant injuries sustained by the tenant in the premises? We think not.

In the case of *Clyne* v. *Helmes* (*Supreme Court*), 61 *N. J. L.* 358; 39 *Atl. Rep.* 767, it was held that the lessor's promise to repair a mantelpiece was without consideration and therefore the tenant had no cause of action against her landlord arising out of injuries caused by the defective condition of this mantelpiece. The landlord's promise, unsupported by consideration, was considered a *nudum pactum* and this though the repairs might benefit the reversionary interest. The general rule of non-liability prevailed. This is unquestionably the majority view throughout the country. See 16 *R. C. L.* 1033 and cases collated in 43 *A. L. R.* 1494, 1495.

Respondents rest heavily upon the holding in the case of *Peterson* v. *Zaremba, supra.* In that case our Court of Errors and Appeals, opinion by Mr. Justice Lloyd, held:

"There is no doubt of the rule of law that normally a tenant leasing premises assumes the risk of dangers from their unsafe condition. To this rule, however, there are two important exceptions: one, where the defective condition is of a portion of the premises used in common by different tenants, as to which the law imposes a responsibility on the landlord to use reasonable care to maintain the same in a reasonably safe condition (*Johnson* v. *Eagle Brewing Co.,* 75 *N. J. L.*

282; *affirmed, 77 Id.* 617), and the other is that where a landlord, upon his attention being called to a defective condition, promises to repair, the risk otherwise assumed by the tenant is transferred to the landlord from the tenant for such reasonable time as may be necessary for the fulfillment of the promise."

It is obvious that the holding of the last cited case does not support plaintiff's alleged right of action. The issue in the Peterson case concerned a common stairway. It should be observed that nothing said in the Peterson case justifies the conclusion that a promise by a landlord to make repairs, under the proofs here exhibited, needs no new consideration to support it. Moreover, the second exception referred to in the opinion, dealing with what might be the result if in fact there were a promise made by the landlord, is clearly an *obiter dictum* and does not, when given fair interpretation, overrule the holding in *Clyne* v. *Helmes, supra.*

Nor does the holding in *Vollkommer* v. *Menge,* 116 *N. J. L.* 82; 182 *Atl. Rep.* 347, avail plaintiffs. It is clearly distinguishable. That case involves the duty of the landlord to use reasonable care once he undertakes to make repairs. Compare *Walsh* v. *Hackensack Water Co.,* 13 *N. J. Mis. R.* 815, 817; 181 *Atl. Rep.* 422, and cases cited. In the case at bar, up to the time of the accident the landlord had not begun any repairs. At best, there was a naked promise to undertake same in the future. It is interesting to observe that in the above cited case the holding in *Clyne* v. *Helmes, supra,* was fully recognized and restated.

There remains only the consideration of the case of *Jordan* v. *Bernstein (Supreme Court),* 9 *N. J. Mis. R.* 669; 155 *Atl. Rep.* 385, urged for the plaintiffs. Therein it was held, *inter alia:*

"In view of the fact that there was no obligation on the landlord in the circumstances shown to make repairs, to make him liable on the theory of an assumption of such duty, it must appear either that he undertook the repairs and did them in a faulty manner, or that he specifically agreed to make the repairs and failed to do so * * *."

The facts of that case are also clearly distinguishable from the facts in the instant case, and the holding there is not, in our opinion, contrary to the stated great weight of authority on the issue here involved. The Jordan case turned on the question as to whether or not the landlord's agent had the authority to act for him. And the clause therein, "or that he specifically agreed to make repairs" unquestionably contemplated a valid, legal promise; one that is supported by a consideration.

We are of the firm opinion that the well established holding in Clyne v. Helmes is controlling and dispositive of this appeal.

A subsequent promise of a landlord to repair rented premises creates no liability in the event of his failure to repair unless such promise is supported by a new consideration.

Judgment reversed. Costs to abide the event.