45 N.J. Super. 176 (1957)
131 A.2d 891
MARY MISTRETTA AND UMBERTO MISTRETTA, HER HUSBAND, PLAINTIFFS-RESPONDENTS,
v.
NICOLA ALESSI AND JOSEPHINE ALESSI, HIS WIFE, AND CARMEN PONTILLO AND MARY PONTILLO, HIS WIFE, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1957.
Decided May 20, 1957.
*177 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Seymour Margulies argued the cause for plaintiffs-respondents (Mr. John J. Pagano, attorney).
Mr. Milton A. Dauber argued the cause for defendants-appellants (Messrs. Carpenter, Bennett, Beggans & Morrissey, attorneys; Mr. Richard H. Hughes, of counsel).
The opinion of the court was delivered by CLAPP, S.J.A.D.
This action was instituted in the Hudson County Court to recover damages for personal *178 injuries. The jury returned a verdict in favor of the plaintiffs Mary Mistretta and her husband, Umberto Mistretta, and against the defendants Nicola Alessi, Josephine his wife, Mary Pontillo, his daughter, and Carmen Pontillo, her husband. Defendants appeal presenting one point, namely, that the court erred in denying their motions for an involuntary dismissal.
Defendants jointly owned the house in Bayonne, N.J., in which they lived. The plaintiff, Mary Mistretta, a sister of the defendant Josephine Alessi, who lived across the street, visited there every day in the week. About 10:30 A.M. on the day of the accident she went to pay her usual call, proceeding along a walk (referred to as an alleyway) that runs beside defendants' house, and entering the house through the cellar door. It had rained the night before, and ice had formed on not only the walk but also the front porch. At 8 o'clock that morning the defendant, Nicola Alessi, had thrown sand on the alleyway and the steps down to the cellar door, as Mary noticed when she came along. However, though he saw that the front porch was icy, he put no sand there because (as he testified) "I had no more. I had just enough for the alleyway."
After entering the house Mary went upstairs, as Nicola, who was in the cellar, observed. Twenty minutes or so later, when she was about to leave, Josephine told her "to go out the front door" which opens on the front porch. Mary was in the habit of using not only the cellar entrance, but also the porch entrance, as a means of ingress and egress. She did, as Josephine suggested, but slipped on the icy porch and injured herself. Nicola at no time had told her that the porch was icy, nor had he said that there was no sand there.
Defendants' argument, shortly stated, is that Mary was a licensee and that defendants' duty therefore was only to refrain from willful and wanton acts of negligence or at most not to create new and undisclosed dangers without warning her of them. They claim that it could not be said that there were willful or wanton acts here or new and *179 undisclosed dangers, and therefore the court should have dismissed the case.
In the last 30 years there have been rather striking developments in the law of New Jersey affecting the liability of an occupier of land to licensees and social guests. At the start of this period the occupier was held not to be answerable to licensees and social guests except for willful or wanton acts. Phillips v. Library Co., 55 N.J.L. 307 (E. & A. 1893); Sohn v. Katz, 112 N.J.L. 106 (E. & A. 1933); Gregory v. Loder, 116 N.J.L. 451 (Sup. Ct. 1936); King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951).
However, early in this era it was said that in connection with a licensee or social guest the occupier must take reasonable care to avoid "active wrongdoing"  that is, to avoid creating any condition upon the premises which could reasonably be regarded as a dangerous instrumentality. Morril v. Morril, 104 N.J.L. 557, 561 (E. & A. 1928); Taneian v. Meghrigian, 15 N.J. 267, 274, 276 (1954); but see the careful opinion in King v. Patrylow, supra, 15 N.J. Super., at page 435. This principle was embodied in the court's charge here. It has been looked upon as an extension of the rule that the occupier must not set a trap for a licensee. Cf. Tahan v. Wagaraw Holding Co., 28 N.J. Super. 436, 444 (App. Div. 1953). Thus in Lordi v. Spiotta, 133 N.J.L. 581, 586 (Sup. Ct. 1946), where the occupier had failed to shut a gas heater off entirely and gas had leaked, it was held that he was guilty of "active negligence," viz., creating a trap, when he asked plaintiff to light the heater. However, in the very interesting opinion in Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1955), the whole subject was clarified; in connection with activities, as distinguished from the condition of premises or the failure to maintain them, the occupier is simply under a duty to exercise reasonable care in the circumstances. Harper and James, Torts, § 27.10 (1956); Prosser, Torts (2d ed.), 448; Restatement, Torts, §§ 341, 342. In that connection then, the standard is the same whether we are dealing with licensees or invitees. Similarly, in that connection, the law *180 rejects the artificiality of the old formularization which lumped into one class the licensee who had casual permission to enter upon vacant land and in fact did enter thereon some one day in the year, and the social guest for whom the landowner had much natural solicitude and who, as here, visited the landowner's home every day in the week.
In this respect the law has reached the point referred to by the Supreme Court in Taylor v. New Jersey Highway Authority, 22 N.J. 454, 463 (1956), in what should be taken as a highly significant passage:
"In modern times the [traditional immunities of owners and possessors of land] have rightly, though gradually, been giving way to the overriding social view that where there is foreseeability of substantial harm landowners, as well as other members of society, should generally be subjected to a reasonable duty of care to avoid it."
However, as indicated in Cropanese v. Martinez, supra, when the courts come to deal with licensees, a distinction is drawn between activities conducted on the premises by the occupier and natural or artificial conditions thereon. Restatement, Torts, §§ 341, 342. The rule with respect to conditions was stated in Taneian v. Meghrigian, 15 N.J. 267, 274 (1954), thus, namely, that the occupier must "give warning [to the licensee] of any concealed danger known to the occupier." By this it is not meant that the occupier's liability is to be confined solely to dangers which he has intentionally or actively concealed. Prosser, supra, 449. The rule is broader in scope and may be stated thus: if the occupier knows of some artificial or natural condition on the premises and, in the exercise of reasonable foresight, should realize that it involves an unreasonable risk to a licensee, then he is under a duty to take reasonable care to make the condition safe or to give a warning of its presence and of the extent of the risk involved. Harper and James, supra, 1472; Restatement, Torts, § 342; Prosser, supra, 445, 448, 449; Laube v. Stevenson, 137 Conn. 469, 78 A.2d 693, 696, 25 A.L.R.2d 592 (Sup. Ct. Err. 1951); cf. Lynch v. McDermott, 111 N.J.L. 216 (Sup. Ct. 1933). The cited authorities *181 further say that the occupier is not placed under such a duty if he could reasonably assume that the licensee is aware of or by a reasonable use of his faculties would discover the condition and realize the extent of the risk. Restatement, Torts, § 342e. However, in our view this merely calls for a consideration of particular matters which are satisfactorily dealt with by the general standard, namely, whether (as above stated) the occupier should realize that a condition known to him involves an unreasonable risk to a licensee.
The distinction taken between conditions and activities rests on the premise that the occupier should be held under no duty to inspect the premises in order to discover dangerous conditions; he is under no duty with respect to conditions unless he has knowledge of them. Restatement, Torts, § 342c. But if the occupier in fact undertakes an activity, he then is obliged to take reasonable care on behalf of those who might be affected. This rule as to conditions is generally said to be applicable to licensees, and we may, at least for the purposes of this case, assume that a social guest is to be classified as a licensee. Morril v. Morril, 104 N.J.L. 557, 561 (E. & A. 1928); Gregory v. Loder, 116 N.J.L. 451 (Sup. Ct. 1936); Lewis v. Dear, 120 N.J.L. 244 (E. & A. 1938); Cosgrove v. Malstrom, 127 N.J.L. 505 (Sup. Ct. 1941); Vogel v. Eckert, 22 N.J. Super. 220 (App. Div. 1952); Taneian v. Meghrigian, 15 N.J. 267, 274 (1954); Annotation, 25 A.L.R.2d 598, 601 (1952); but see Lynch v. McDermott, 111 N.J.L. 216 (Sup. Ct. 1933); Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1955). Cf. Prosser, supra, 451; Harper and James, supra, § 27.11. Cf. the rule applicable to a social guest in an automobile who has been invited by the operator to ride therein. Lippman v. Ostrum, 22 N.J. 14, 22 (1956); cf. Prosser, supra, 451, distinguishing between conditions of the car and its operation; Harper and James, supra, 950, 1164.
Are we dealing here with a condition or an activity? The fine line that may have to be drawn in some cases *182 between activities and artificial conditions, only demonstrates the wisdom of the tendency of the law, noted in Taylor v. N.J. Highway Authority, 22 N.J. 454, supra, to rest more and more upon the standard requiring due care to the plaintiff, or to persons in his position, under the particular circumstances. However, in the instant case it is of no consequence whether the situation be regarded as an activity or a condition.
The placing of the sand upon the walk almost contemporaneously with the accident (that is, three hours before it occurred) and upon only some of the places over which a pedestrian might be expected to pass, gave the situation the aspect of an activity. As we have said, Nicola was under no duty to prepare a safe place for licensees by sanding the walk. However, having once undertaken affirmatively to do so, he is under an obligation to act with due care in that regard. Prosser, supra, 187. On the oral argument defendants pointed out that there was no proof that Nicola knew that Mary was leaving or was to leave by the front door, and they contended that there was therefore nothing to indicate negligence on his part with respect to her. This point was not raised either on the motion for involuntary dismissal or in any way below or even in defendants' main brief or reply brief here; but, aside from that, the fact that Mary had left through the front door at previous times presented in our opinion a jury question as to whether Nicola should not have foreseen that she might do so on the day of the accident. Assuming, therefore, that we are dealing with an activity, we conclude that the motion for an involuntary dismissal was properly denied.
On the other hand, we may perhaps regard the ice on the porch as a condition. However, Nicola knew of it; and under the rule applicable to licensees, if he had cause to believe that the ice there would create an unreasonable risk, either in that Mary on leaving by the front door would expect to find sand there or would not discover the ice or else would not realize the risk, then he was under a duty to eliminate the danger or give her a reasonable warning *183 as to its presence. Cf. Lynch v. McDermott, 111 N.J.L. 216 (Sup. Ct. 1933).
In either event, whether we have here an activity or a condition, the motion for an involuntary dismissal as to Nicola was properly denied. No attempt was made, even on the oral argument before us, to set aside the judgment as against the Pontillos or indeed as against Josephine. Defendants apparently are willing to abide by the judgment if it is sustained as to at least one of them.
There is some suggestion by defendants that, as a matter of law, Mary was guilty of contributory negligence and chargeable with an assumption of risk. But there is no merit to this.
Affirmed.