45 N.J. Super. 428 (1957)
133 A.2d 50
HELEN MARIE KNOX, AN INFANT, BY HER GUARDIAN AD LITEM, MATTHEW KNOX, AND MATTHEW KNOX IN HIS OWN RIGHT, PLAINTIFFS-RESPONDENTS,
v.
JULIAN GOODMAN, T/A LORI SHOE STORE, DEFENDANT-APPELLANT, AND R.G. CORPORATION AND WESTFIELD AVENUE REALTY COMPANY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued May 27, 1957.
Decided June 18, 1957.
*430 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Donald R. Taggart argued the cause for appellant (Mr. Charles A. Cohen, on the brief).
Mr. Joseph Tomaselli argued the cause for respondents (Mr. Peter J. Coruzzi, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
The essential question in this action is the liability of a lessee in possession of premises for his failure to remedy a defective stairway condition, which failure caused injuries to a neighbor's child of tender years who came upon the property on its own initiative to call the lessee's child to play.
The Knox and Goodman families were next door neighbors, and their children playmates. The defendant, Julian Goodman, was the lessee under a written lease for a term of three years, of the entire premises at 2625 Westfield *431 Avenue in the City of Camden, a two-story building. He operated a retail shoe store on the first floor and lived with his wife and daughter, Susan, about seven years of age, in an apartment over the store. The Knox family, consisting of husband, wife and two small girls, Helen Marie, about three years of age, and Mary Jane, about seven, occupied the adjoining second-floor apartment at 2627 Westfield Avenue, attached to and physically part of the same structure which includes 2625 Westfield Avenue. In the rear of the attached building is a yard, from which entrance to the Knox and Goodman apartments is provided by an open wooden stairway which has 13 steps to a landing, and from there, to the right, a flight of steps leading to defendant's apartment and, to the left, a flight of steps to plaintiff's apartment. This stairway provides the only means of access to plaintiff's apartment, but defendant's living quarters can also be reached from a stairway in the front of the building.
Mary Jane Knox and Susan Goodman often played together in the back yard and, on occasion, in the Goodman apartment, although the testimony as to the number of these occasions in the apartment is conflicting. At times they were joined by the younger Knox child, Helen, the plaintiff, who, according to Mary Jane's testimony, had on different occasions used both the front and rear stairways to reach the Goodman apartment. On July 15, 1955, while the Knox children were playing in the yard, the three-year-old Helen ascended the back stairway to the Goodman apartment to ask Susan to come out to play with them. Receiving no response, she began to retrace her steps, and on the third step above the landing turned her ankle and fell under the handrail at the edge of the stairway to the ground about 20 feet below, sustaining the injuries for which recovery is sought by this action.
The testimony discloses that the stairway had been built for the owner of the property some years before defendant entered into possession, and that defendant has made no changes. Thus, it was in the same condition on the date *432 of the accident as it had been when he took possession. Expert witnesses on behalf of plaintiff testified that the stairway was of substandard construction in that there were no balustrades between the steps and handrail, leaving an opening of about 31 inches, nor was there an intermediate handrail between the steps and the existing handrail. The steps were considered so unsafe by the defendant himself that he forbade his daughter to use them. He candidly testified on cross-examination that "My daughter Susan is forbidden to use those stairs" because the back stairs were "very high"; about "twenty-five or thirty feet off the ground." He further testified as follows:
"Q. Do you feel those steps were a safe place for your daughter to go in and out of the apartment? * * *
A. Well, I considered those steps not safe for my daughter to go in and out of the apartment, as we didn't let her go in and out. * * *
Q. Do you think they would be safe for any other child?
A. If they weren't safe for my daughter they weren't safe for another child.
Q. Do you think they would be safe for any other child? * * *
A. Well, I don't think it would be safe for another child."
Neither the defendant nor his wife, who had seen the children play in the yard on other occasions, cautioned the Knox children or forbade them to use the steps.
The present action is predicated upon the theory that the child was an invitee and that the defendant failed to provide a safe handrail for those using the stairway, but permitted a condition to exist which, in the exercise of reasonable foresight, he should have realized involved danger to the infant plaintiff. The owner of the property and its primary lessee, from whom the defendant Goodman sublet, were made parties defendant, but were discharged on motion at the conclusion of the submission of plaintiff's evidence, and the case went to the jury against Goodman alone. The jury awarded a verdict for $12,000 in favor of the infant plaintiff and $3,000 for her father. The court denied defendant's motion for a new trial, and defendant appeals.
*433 On this appeal defendant denies plaintiff's contention that the child was an "invitee" at the express or implied invitation of defendant, and asserts that even from the most favorable view she was but a "social visitor" or "guest licensee." The trial court submitted the question of status to the jury, charging that if they found the child was an invitee it was defendant's duty to keep the stairway in a reasonably safe condition for her use; but if they found her to have been a mere licensee, then the only duty which defendant owed her was to refrain from willful or wanton acts. By its verdict the jury apparently concluded that the child was an "invitee" and not a "licensee." We believe that the submission of the infant plaintiff's status to the jury was erroneous. Such an issue is properly for a jury when the facts or inferences to be drawn from the facts are in dispute, Augustine v. Haas, 121 N.J.L. 58 (E. & A. 1938); Hudson v. Gas Consumers Ass'n, 123 N.J.L. 252 (E. & A. 1939). When, however, neither the facts nor inferences present such a dispute, the question is for the court. Cosgrave v. Malstrom, 127 N.J.L. 505 (Sup. Ct. 1941); Cowan v. Kaminow, 128 N.J.L. 398 (E. & A. 1942). Here there was no evidence of an express invitation by the defendant or any member of his family and, from the relationship of the parties, the conduct of the children on previous occasions, the attitude of the defendant toward the infant plaintiff, the legal status of the child was that of a social visitor or guest  that is to say, she was impliedly welcome to come upon the premises to play or visit with defendant's child as a playmate. In conventional terms, she was a licensee. It is upon such a status that defendant's duty must be considered, although, as will be seen, the definition by the trial court of the nature of the duty owing her was, under the particular circumstances, no more severe than that called for by our most recent cases.
Defendant contends that if the infant plaintiff be regarded a social visitor, it could not have been demanded of him that he change his home or the entrance to it to make them safe for her use, relying on the cases which hold that a *434 social visitor to a private house is a licensee and must take the property as he finds it, and that the duty of the host is but to refrain from willful and wanton injury. Morril v. Morril, 104 N.J.L. 557 (E. & A. 1928); Gregory v. Loder, 116 N.J.L. 451 (Sup. Ct. 1936); Lewis v. Dear, 120 N.J.L. 244 (E. & A. 1938); Cosgrave v. Malstrom, supra; Vogel v. Eckert, 22 N.J. Super. 220 (App. Div. 1952); Tahan v. Wagaraw Holding Co., 28 N.J. Super. 436 (App. Div. 1953); 2 Harper and James, Torts (1956), § 27.12, p. 1478; Prosser, Torts (2d ed. 1955), § 77, p. 447; Annotation: "Injury to Social Guest," 25 A.L.R.2d 598. This limited degree of liability to licensees at an early date related to the static condition of premises and to acts of omission as distinguished from active wrongdoing. Today, however, the distinction between negligent acts of omission and commission is rapidly vanishing as a measure of liability of occupiers of land to licensees. Taneian v. Meghrigian, 15 N.J. 267 (1954); Taylor v. New Jersey Highway Authority, 22 N.J. 454 (1956); Cropanese v. Martinez, 35 N.J. Super. 118 (App. Div. 1955); Hawkins v. Coulson and Purley Urban District Council (1954), 1 Q.B. 319; Marsh, "The History and Comparative Law of Invitees, Licensees and Trespassers," 69 Law Q. Rev. 182 (1953). In the Taneian case Justice Heher made an historical survey of the doctrine and quoted at length, 15 N.J., at page 276, from the opinion of Justice Denning in the Hawkins case, as follows:
"It always was an illogical distinction. Many acts of commission can be regarded as acts of omission and vice versa. It all depends on how you look at it. * * * It seems to me that the real significance of an act of commission is that it means that the occupier must have actual knowledge of the state of affairs he has created. Taking that significant feature and applying it to an act of omission, you will find that liability depends on whether the occupier has actual knowledge of the state of affairs existing on the land, no matter whether he himself created it or someone else. Once he has that knowledge, then if he knows or ought to know that it is a danger, he is under a duty to use reasonable care to prevent damage from that danger.
* * * there are the cases about children who have been allowed to come onto the land and have meddled with things there. *435 They are licensees. The question in such cases is whether the occupier has actual knowledge of the state of affairs existing on the land and the tendency of children to meddle. Once he has that knowledge, then if he knows or ought to know that it is a danger, or will be a danger if they meddle, then he is under a duty to use reasonable care to prevent damage from that danger; and this is so whether it arises from an act of omission or commission." (Italics ours)
At page 279 of 15 N.J. he further stated:
"The New Jersey cases suggest judicial departure in substantial degree from the early common-law doctrine; but these deviations are now imbedded in our jurisprudence by legislative acquiescence."
More recent approval of this modification of the common law doctrine to conform with modern and enlightened thought was expressed by Justice Jacobs in Taylor v. New Jersey Highway Authority, supra, 22 N.J., at page 463:
"In modern times the immunities have rightly, though gradually, been giving way to the overriding social view that where there is foreseeability of substantial harm landowners, as well as other members of society, should generally be subjected to a reasonable duty of care to avoid it."
Accepting the rule thus laid down in the Hawkins case, and restated in Taneian, we find that although the trial court erred in submitting to the jury the question of the infant plaintiff's status, it does not warrant reversal, as the charge was more favorable to defendant than that to which he was entitled. By defendant's own frank admission, he was aware of the condition of the stairway and considered it "unsafe" for use by his daughter, aged seven, or by any other child. Having such knowledge he was bound to exercise reasonable care to prevent injury to a child of such tender years from the danger, as it was foreseeable that she would come upon his stairway and that the open space between the handrail and the steps would be dangerous to one of that age. It was pertinently stated in Danbeck v. New Jersey Traction Co., 57 N.J.L. 463 (Sup. Ct. 1895), by Chief Justice Beasley that:
*436 "Very few of the rules that regulate the conduct of a man with his fellow could be applied with the least show of reason to his intercourse with children. It is the legal duty of every one dealing with a child to protect it against its own discretion."
Quoted with approval in Harris v. Mentes-Williams Co., Inc., 11 N.J. 559 (1953); cf. Strang v. South Jersey Broadcasting Co., 9 N.J. 38 (1952); Hoff v. Natural Refining Products Co., 38 N.J. Super. 222 (App. Div. 1955); Diglio v. Jersey Central Power & Light Co., 39 N.J. Super. 140 (App. Div. 1956); Restatement, Torts, § 339, p. 920.
Defendant's obligation, as recently stated by this court, was to exercise reasonable care either to make the condition safe or to give a warning of its presence and of the extent of the risk involved. Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957). Since it is admitted that no warning was given  assuming that a warning to such a young child would have been efficacious  and the remaining factor of reasonable care to render the condition safe having been determined in plaintiff's favor by the jury, the judgment below will not be disturbed.
Even under the former social visitor doctrine, the owner of a private home "is bound to take the same care of him [the guest] that he takes of himself and the other members of his family, and no more." Morril v. Morril, supra; Lewis v. Dear, supra. Defendant had warned his own child not to use the stairway, but he gave no such warning or admonition to the infant plaintiff.
Defendant seeks to escape liability because he is not the owner of the premises he occupies, but only a lessee. He was, however, in exclusive possession and control of the entire premises occupied by him and of that part of the stairway from which the child fell. The provision in his lease that he should "make no changes, alterations, additions, or improvements to the premises * * * without the lessor's written consent first had and obtained," could not relieve defendant of his duty to warn or protect the three-year-old plaintiff from an unsafe condition or danger of which he was aware. See Longi v. Raymond-Commerce Corp., *437 34 N.J. Super. 593 (App. Div. 1955); 32 Am. Jur., Landlord and Tenant, § 822, p. 699 (1941); and cf. Guensch v. Trustees of Third Presbyterian, etc., Newark, 109 N.J.L. 78 (E. & A. 1932); Restaino v. Griggs Motor Sales, Inc., 118 N.J.L. 442 (Sup. Ct. 1937).
Additionally, defendant contends that the defective stairway was not the proximate cause of plaintiff's injury. The testimony discloses that the infant plaintiff turned her ankle on the third step and fell through the space between the tread of the stairway and the handrail. The expert witnesses testified that the stairway was substandard in that it had no intermediate rail or balusters supporting the handrail so as to close in the area between the steps and handrail.
Although the turning of the child's ankle on the step precipitated her initial stumble, it was the absence of adequate balusters or an intermediate railing which the jury could find, and evidently did find, was the natural and proximate cause of her stumble leading to the fall from the step to the ground, 20 or more feet below. The very danger of the open space between the handrail and the steps is that there was afforded inadequate protection against a fall to the ground by one of such tender years who might slip or stumble on the stairway. From the testimony of the height of the step and the evidence of the substandard condition of the stairway, the issue of proximate cause was properly submitted to the jury. Vadurro v. Yellow Cab Co., 6 N.J. 102, 108 (1950).
There is no substance to defendant's contention that the court committed reversible error in its charge respecting defendant's duty to plaintiff, since this charge imposed a duty no more severe than was defendant's actual responsibility, or in denying the motion for a new trial.
Affirmed.