52 N.J. Super. 94 (1958)
144 A.2d 900
SARAH BERGER, PLAINTIFF-APPELLANT,
v.
SAMUEL SHAPIRO, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1958.
Decided September 23, 1958.
*97 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Herman M. Wilson argued the cause for plaintiff-appellant.
Mr. H. Curtis Meanor argued the cause for defendant-respondent (Messrs. Emory, Langan, Lamb & Blake, attorneys; Messrs. James J. Langan and H. Curtis Meanor, of counsel and on the brief).
*98 The opinion of the court was delivered by FREUND, J.A.D.
This is a negligence action wherein at the conclusion of the entire case a judgment of involuntary dismissal was entered by the County Court, and the plaintiff appeals.
Sarah Berger, about 70 years of age, came from Florida to attend a family wedding in September 1955 and stayed at the home of her daughter and son-in-law in Cedar Grove, New Jersey. She had been a social guest there for two or three weeks prior to the accident on September 13, 1955.
Mrs. Berger had been suffering from glaucoma for 13 years, and her vision was so seriously impaired that at the trial she was unable to identify a photograph of the steps from which she fell. She testified to being unable to see clearly, that "everything is shadowy like." Ordinarily, some one helped her in and out of the house; indeed, plaintiff testified that she always had some one with her as she ascended the porch steps. Generally, she used the back entrance where there is a banister.
On September 13, 1955 plaintiff was sitting on the lawn in front of defendant's home. Her sister was inside the house, and defendant's wife was next door with a neighbor. Plaintiff decided she wanted something inside the house. She testified as to what followed:
"So I thought I will go myself. So I walked up slowly, up the steps, and when I opened the door, I went back so the door would open, and my foot went into something that was empty and I fell down and broke my foot."
That "empty something" into which plaintiff stepped may have been the space previously occupied by a brick, for the testimony discloses that in July 1955 defendant's wife, Mrs. Shapiro, removed two bricks, one from each end of the top step. The stated reason for that act was that they had been loose. She informed her husband shortly after their removal, but they were never replaced because the defendant had resolved to install an iron railing in their stead. However, he never did.
*99 After the defendant concluded his case, his attorney moved for judgment on the ground that the only duty owed to a social guest is to refrain from willful or wanton negligence and that plaintiff had been guilty of contributory negligence as a matter of law. The trial judge granted the motion because of "lack of evidence" indicating that "the space caused by the removal of the brick" was the "natural and proximate cause of her fall." This appeal followed.
Initially, we direct our attention to the reason advanced by the trial judge for dismissing the complaint; viz., did the removal of the bricks cause plaintiff's fall? We note that this is not a question of proximate cause in the usual sense; it is whether there is any causal connection at all. McCappin v. Park Capitol Corp., 42 N.J. Super. 169 (App. Div. 1956); Genovay v. Fox, 50 N.J. Super. 538, 561, 562 (App. Div. 1958); 65 C.J.S. Negligence § 106. The question is whether it was open to a jury to find that the space from which one of the bricks had been removed was that into which Mrs. Berger stepped and fell.
In proceeding to that determination, we are not unmindful of a salutary body of rules, ever-ready to guide our courts in passing upon motions to dismiss. A weighing of the evidence is not permitted on a motion to dismiss. To the contrary, if on such a motion any of the evidence would cause fair-minded men to differ as to whether there was a reasonably probable relation of cause and effect between the alleged negligence and the injuries, the issue must be submitted to the jury for its determination. Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102 (1950); Stanley Co. of America v. Hercules Powder Co., 29 N.J. Super. 545, 554 (App. Div. 1954), reversed on other grounds, 16 N.J. 295 (1954); Bergquist v. Penterman, 46 N.J. Super. 74, 89 (App. Div. 1957), certification denied 46 N.J. 55 (1957). It is also well settled that on a motion for involuntary dismissal the trial judge must accept as true all evidence supporting the position of the party against whom the motion is made, and must give him the benefit of all inferences that may logically and legitimately be drawn therefrom. O'Donnell *100 v. Asplundh Tree Expert Co., 13 N.J. 319, 328 (1953); Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955).
Also at our disposal is the rule that the test of the sufficiency of evidence in a civil action is probability, not possibility. Bornstein v. Metropolitan Bottling Co., 26 N.J. 263 (1958); Joseph v. Passaic Hospital Ass'n, 26 N.J. 557, 574, 575 (1958); Kahalili v. Rosecliff Realty, Inc., 26 N.J. 595, 607 (1958). In Bornstein, a res ipsa loquitur case wherein the court affirmed submission of the case to the jury, Justice Heher stated:
"It is not easy to lay down with precision the line of demarcation between a just and reasonable inference and mere conjecture or surmise. The accepted standard of persuasion is that the determination be probably founded in truth."
Consequently, our task is to determine whether it is reasonably probable or simply conjectural that the space left by the removal of the brick caused plaintiff's fall.
That task becomes less formidable once we reflect upon the testimony in this case. Plaintiff's theory is that she fell by stepping into the empty space left by removal of the brick on the right side of the porch (facing the house). The defendant argues that the fall occurred when plaintiff inadvertently stepped off the side of the porch, that she could not have stepped into the brick space without coming into contact with the second layer of bricks. But here the plaintiff testified either that she "went into" or "fell into" something. Notwithstanding plaintiff's difficulty with English, we think her testimony leads to a clear inference that she stepped into a cavity of some sort and not off the side of the porch.
Having in mind that she could have fallen off the side or the front edge of the landing, defendant also argues that the chance that it was the empty brick space into which plaintiff stepped is so slight as not to amount to a reasonable probability. But in this regard we must consider plaintiff's testimony that she stepped into the empty space when *101 she opened the door. As the door concededly opened out toward the side where she fell (right side facing the building; left side facing the street), there is a reasonable probability that the space into which she fell was in the vicinity of the removed brick.
We have already stated in passing that a dangerous condition existed. At least it was open to the jury so to find. Nor is this the less true because, as defendant argues, "removal of a brick from each front corner * * * created a symmetrical pattern of design * * *." We do not wish to appear unresponsive to defendant's sense of symmetry; we say only that an examination of the photographs in evidence here reveals that a jury could reasonably have found that a dangerous condition existed, whatever the aesthetic advantage in removing certain bricks.
The defendant challenges the propriety of burdening him with the duty of reasonable care in the factual circumstances. His brief endeavors to show that, while our courts have expanded the owner's liability to social guests for injuries resulting from an activity taking place on the premises, they have not and should not do so for injuries resulting from a condition of the premises. He suggests that this distinction would entail varying legal consequences, citing this statement from Cropanese v. Martinez, 35 N.J. Super. 118, 122 (App. Div. 1955):
"In this case it does not matter whether plaintiff was an invitee or a licensee. That distinction becomes significant only in regard to * * * the static condition of the premises."
However, the Cropanese case actually dealt only with an activity of a landowner and held that he was obliged to exercise reasonable care on behalf of those who might be affected thereby, even a social guest. In Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957), a thorough recapitulation of the present status of the law on this subject, it is held that even as to a static condition of the premises a landowner, who knows of some artificial or natural condition of the premises and, in the exercise of reasonable foresight, *102 should realize that it involves an unreasonable risk of harm to a licensee (including a social guest), is under a duty to take reasonable care to make the condition safe or to give warning of its presence and the risk involved. (45 N.J. Super. at p. 180). Cf. Knox v. Goodman, 45 N.J. Super. 428 (App. Div. 1957); Debes v. Morganroth, 48 N.J. Super. 39, 41 (App. Div. 1957). In our opinion, the rule stated in Mistretta applies here. It was for the jury to determine whether this condition was so dangerous that the defendant should have considered the likelihood that the plaintiff might have occasion to use the steps.
Defendant further argues that the two bricks were missing for two months and during plaintiff's entire visit, and, therefore, their removal did not constitute a concealed danger. But liability in this sphere is not limited to concealed dangers. It extends to any unreasonably hazardous condition as to which defendant neither warns nor takes reasonable steps to eliminate. Moreover, in the present case plaintiff's glaucoma made a duty to warn more essential than would otherwise be the case. "[G]reater consideration and care are due persons known to be unable to take care of themselves * * *." 38 Am. Jur., Negligence, § 201, pp. 882-883. See also 38 Am. Jur., Negligence, §§ 37, 38, pp. 683-684; Carter v. Public Service Coordinated Transport, 47 N.J. Super. 379, 388-389 (App. Div. 1957).
Nor does defendant distinguish the Mistretta case from the instant case. The facts there were quite similar to those here. Instead of a missing brick, there was ice on the front porch. The defendant had also realized the ice constituted a danger, for he had sanded the alleyway, but not the front porch, because he had run out of sand. The court said:
"* * * we may perhaps regard the ice on the porch as a condition. However, Nicola knew of it; and under the rule applicable to licensees, if he had cause to believe that the ice there would create an unreasonable risk, either in that Mary on leaving by the front door would expect to find sand there or would not discover the ice or else would not realize the risk, then he was under a duty *103 to eliminate the danger or give her a reasonable warning as to its presence." (45 N.J. Super. at pages 182, 183)
Cf. Taylor v. New Jersey Highway Authority, 22 N.J. 454, 463 (1956); Genovay v. Fox, supra; Note, 9 Rutgers L. Rev. 589 (1955).
Defendant argues that the Mistretta rule does not justify submission of this case to the jury because of plaintiff's failure to prove as part of her affirmative case that the defendant never warned her of the missing bricks. We think, however, that where a cause of action is based on, among other things, the failure to warn, it is unduly burdensome to require the plaintiff to prove the negative of the issue, where, as here, the plaintiff's testimony fairly implies that no warning was given. It is not requiring too much of the defendant that he plead and prove by way of justification any warning he may have given. Cetofonte v. Camden Coke Co., 78 N.J.L. 662, 665 (E. & A. 1909); 65 C.J.S. Negligence § 186(e), p. 879; 9 Wigmore, Evidence (3d ed. 1940), § 2486, pp. 275, 276. Moreover, the motion to dismiss did not include this ground. If it had and the question was conclusive, the trial court, to serve the interest of justice, undoubtedly would have afforded plaintiff an opportunity to prove the facts, if she could.
Defendant's counsel cites authority from other jurisdictions, notably Laube v. Stevenson, 137 Conn. 469, 78 A.2d 693, 25 A.L.R.2d 592 (Sup. Ct. Err. 1951), to the effect that there is no duty where the landowner cannot reasonably foresee that harm will come to the particular licensee who is, in fact, injured. In this connection, he contends that it was completely unexpected to Mr. Shapiro that his mother-in-law would attempt to negotiate the porch steps herself. However, the proof was to the contrary. He testified that he did not know whether plaintiff customarily used the front or side entrance.
The circumstance of plaintiff's visual defect has two effects. It increases the duty owed her by those with knowledge of the defect, as already stated. And it requires *104 her to put forth a greater effort for her own safety than one not disabled. "Those who are deficient in any one of their senses must all the more diligently use the others." 38 Am. Jur., Negligence, § 210, p. 895; Buttelli v. Jersey City, H. & R. Electric Ry. Co., 59 N.J.L. 302, 306 (Sup. Ct. 1896); DiMenna v. City of Philadelphia, 381 Pa. 596, 114 A.2d 123 (Sup. Ct. 1955).
But the cases in this jurisdiction are legion to the effect that contributory fault must be the only permissible inference to justify dismissal, that the assessment of conduct is ordinarily a factual function, and that "only in the clearest case of fault, where the contrary hypothesis is not fairly admissible, does the question become one of law for appropriate action by the court." See, e.g., Taneian v. Meghrigian, 15 N.J. 267, 283 (1954).
In the instant case, plaintiff did not proceed in the face of a known danger. There is no evidence that she knew of the missing brick. The defense of assumption of risk briefly suggested is, therefore, without merit. And no recitation of authority is required to show that it was not necessarily contributorily negligent for plaintiff to arise, ascend four wide steps, and attempt to enter the house. Mrs. Berger testified that she proceeded slowly and cautiously up the steps. Perhaps, because of her defective vision, she ought to have summoned aid. But it should be remembered that plaintiff had glaucoma for 13 years. She must have had some experience in getting about herself. Indeed, from what appears, it seems that she came all the way from Florida by herself. It seems to us that we are unable to say that there was such an error of judgment on her part or that she was so impervious to her own safety as to require us to find contributory negligence as a matter of law.
Moreover, there is no demonstration that her faulty eyesight was a cause of the injury. Even a person with good vision might not have noticed the empty space.
There is some question of whether defendant was negligent in failing to install a handrail. That point, however, is not "necessarily suggested by the statement of *105 questions involved" within R.R. 1:7-1(c). Nor was the case tried on that theory. We do not, therefore, pass on that point.
Reversed and remanded for new trial.