53 N.J. Super. 336 (1958)
147 A.2d 572
MARTIN SNYDER, PLAINTIFF-APPELLANT,
v.
I. JAY REALTY CO., AND ARNOLD SACHS, ISIDORE SACHS, AND J. MILTON SACHS, PARTNERS, TRADING AS NEW JERSEY KNITWEAR CO., AND NEW JERSEY KNIT WEAR CO., A CORPORATION OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 1958.
Decided December 19, 1958.
*339 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Bernard Chazen argued the cause for plaintiff-appellant (Mr. Theodore Schwartz, attorney; Mr. Nathan Baker, of counsel; Mr. Chazen on the brief).
Mr. James P. Beggans argued the cause for defendant-respondent I. Jay Realty Co. (Messrs. Beggans and Keale, attorneys; Mr. Robert E. Tarleton, on the brief).
*340 Mr. George W. Connell argued the cause for defendants-respondents, Arnold Sachs, Isidore Sachs and J. Milton Sachs, partners, t/a the New Jersey Knitwear Co. and New Jersey Knit Wear Co. (Messrs. Shaw, Pindar, McElroy & Connell, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The plaintiff, Martin Snyder, instituted this action in March 1954 to recover for personal injuries sustained as the result of the defendants' negligence. The accident occurred on the night of April 6, 1953 at the defendants' factory building in Newark. Principally because of improper lighting in a passageway leading to a loading platform, plaintiff stepped off the walking area into an unguarded "trench" or opening, over three feet deep, thereby sustaining the injuries for which recovery is sought. This is an appeal from the entry of a dismissal by the trial judge of the Law Division at the end of the entire case.
The defendant I. Jay Realty Company is the owner and landlord of the premises at 39 Fourth Street, Newark. The defendants Arnold Sachs, Isidore Sachs, and J. Milton Sachs are partners trading as the New Jersey Knitwear Company, which occupies only the third floor of the building as a tenant. The New Jersey Knit Wear Company, a corporation of New Jersey (an entity apart from the Knitwear Company partnership), was also named as a party defendant.
On April 6, 1953, sometime between 7:00 and 8:30 P.M., plaintiff met one Frank Sellick, a truckdriver employed by the Knitwear Company, in New York. Sellick had then been employed by the tenant-defendant for about eight or nine months. The employee invited plaintiff to his employer's place of business on a purely social visit. Snyder accompanied him to the Newark building, intending to go with Sellick on a personal errand thereafter. Upon arrival at the premises, Sellick parked his truck at the loading platform at the rear of the building, and the two men then walked to the front and ascended the steps to the third floor.
*341 Plaintiff browsed around, had a "coke," and watched the other employees of Knitwear who were working that night. In the meantime, Sellick and Morgan Batten, the acting night foreman, proceeded to load some cartons of sweaters onto a freight elevator in the rear of the building. After about 20 minutes on the third floor, during which time plaintiff had been introduced to several of the employees, Sellick advised him "we are ready to leave." The three men  foreman Batten, Sellick, and Snyder  thereupon entered the freight elevator and descended to the ground floor. Batten then picked up a carton and carried it from the elevator. Sellick did likewise, as did plaintiff, who followed the first two as they walked toward a loading platform outside the building where the truck had been parked.
It was now dark outside, and the dim light from the elevator illuminated only the immediate area. After a 5 to 12 foot walk from the elevator, the passageway and loading platform were "pitch black." The passageway then made a turn; at that point plaintiff could see only the back of the person he was following. Guided only by the moving form ahead of him, plaintiff suddenly fell from the passageway into the unguarded trench. Sellick testified that when he returned to find his friend, Snyder was "in terrible pain and delirious."
The elevator, passageway, and loading platform were for the use of all the tenants and were under the control of the landlord. Although there was another "light socket" on the wall adjacent to the platform, it had not been functioning during Sellick's entire employment. On a previous occasion Sellick himself had fallen into the trench and had requested one of his employers, Arnold Sachs, to have the light repaired. He testified that two months before Snyder's fall Sachs had, in his presence, called the landlord and complained about the absence of a light.
Milton Sachs, manager of the knitting mill, was the only one of the three partners of the Knitwear Company to testify. He said that he had never authorized his employees to bring guests onto the premises, never knew of his employees *342 doing so, and did not know that plaintiff was in the building on the night of the mishap. He was not asked whether the employees had been forbidden to bring their social guests on the premises. Sachs further testified that he did not know precisely which of his employees would use the elevator and passageway or that the area was dark or that the light did not function.
When the case was first tried the trial judge granted an involuntary dismissal on plaintiff's opening statement. The Appellate Division reversed and ordered a new trial, 46 N.J. Super. 323 (1957). The Supreme Court denied certification, 25 N.J. 316 (1957). The case was tried again before the Superior Court, Law Division.
At the conclusion of the plaintiff's case defendants moved to dismiss for the plaintiff's failure to prove a prima facie case. The trial judge ruled:
"From a reading of the opinion of the Appellate Division upon the appeal already had in this case, it appears that there is enough in that opinion to prevent this Court from dismissing, as a matter of law, the case for insufficiency of plaintiff's proof."
The defendants then presented Milton Sachs, whose testimony we have already summarized. Upon the conclusion of his testimony, defendants again moved for a dismissal. After an extended colloquy between counsel and the court on the effect and meaning of the appellate decision, the trial judge granted the defendants' motion after stating that his earlier dismissal had been reversed
"* * * upon presuppositions of proof that have not materialized in the evidence adduced at the present trial. * * * The connotations of what plaintiff in this connection claims to be the law are startling. If it is within the province of employees to bring strangers within the working plant with resulting legal relationship claimed, the consequence would be chaos in that branch of the law."
He therefore held that
"* * * the proofs show without contradiction that plaintiff was a trespasser. * * *"
*343 Once more plaintiff appeals from the trial court's refusal to permit his case to go to the jury. To justify the result below defendants assert that (1) plaintiff's legal status on defendants' premises was that of a trespasser and hence the only duty owed to him was to refrain from acts willfully injurious; (2) plaintiff failed to prove a prima facie case of negligence or nuisance in that he failed to prove improper construction, faulty repair or unsafe condition; and (3) plaintiff was guilty of contributory negligence or assumption of risk.
Before considering the basic issue raised by this appeal, viz., the proper status-classification of a social guest of an employee while on the premises of the employer, we deem it appropriate to set forth the duties owed by the defendants in their respective capacities as landlord and tenant.
As to the defendant-landlord, we have the benefit of Judge Clapp's earlier opinion in this case, 46 N.J. Super. 323, where the rule as to the liability of a lessor to the lessee's licensee was stated to be that
"* * * the landlord owed the tenants' licensee the full duty of reasonable care with respect to those common entryways and passageways, appurtenant to their leasehold, which the tenants were entitled to use and which the licensee might reasonably be expected to traverse."
So long as the landlord might, in the exercise of ordinary prudence, have foreseen that plaintiff or one of his class would use the passageway in question and would thereby be subjected to an unreasonable risk of harm as a result of a condition such as improper lighting, the landlord is answerable to this plaintiff, as he is to all those "lawfully upon the land with the consent of the lessee." Restatement, Torts, § 360; Annotation, 26 A.L.R.2d 468, 477 (1952); Taneian v. Meghrigian, 15 N.J. 267, 277, 278 (1954); Taylor v. New Jersey Highway Authority, 22 N.J. 454, 461 (1956). In view of the testimony relating to Sellick's having fallen into the trench on a prior occasion, Sachs' having notified the landlord of the condition, and the use *344 of this passageway and loading platform by all the tenants in the building, plaintiff's case properly and clearly raised a jury question as to the lessor's liability, assuming, of course, that the failure to have the passageway properly lighted did create an unreasonable risk of injury and that the plaintiff was indeed the tenant's licensee.
In determining the liability of the tenant to his own licensees the predominant consideration is again the tenant's knowledge of or ability to foresee any unreasonable risk of harm to his licensees resulting from the lessor's failure to maintain the common approaches or exit-ways. Given knowledge or foreseeability of such a dangerous condition, the tenant, as any other possessor of land, must exercise reasonable care to make the condition reasonably safe or to warn the licensee of the risk. Restatement, Torts, §§ 342 and 360, comment (a). Cf. Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957); Berger v. Shapiro, 52 N.J. Super. 94 (App. Div. 1958), certif. granted 28 N.J. 306 (1958). The evidence as adduced at the trial below clearly indicates that a jury question was presented as to whether or not the tenant should have appreciated the risk to this plaintiff, whether through the knowledge of its foreman that Snyder was using the passageway, or otherwise.
Moreover, notwithstanding Judge Clapp's isolating this issue of foreseeability on the part of the tenant as "the principal question thus presented," 46 N.J. Super. at page 329, the trial judge erroneously sustained an objection to a question asked of Sellick as to whether he had previously brought others upon the premises. Although counsel's explanation for proffering this question was unclear, the frequency with which persons other than employees had visited this place of employment was immediately relevant to the question of whether the tenant should have foreseen the risk of harm to its licensees. Parenthetically, we note that Sellick responded, before objection was made, that he had brought others to the premises.
In fine, the evidence as we have outlined it earlier in this opinion reveals that a jury might well have determined *345 that both the tenant and the landlord not only should have foreseen that plaintiff or one of his class would be unreasonably subjected to the risk of harm in the use of the passageway in question, but also should have foreseen the actual use of this passageway by a licensee of the tenant.
We turn, then, to the critical issue raised by this appeal  whether plaintiff as a social guest of an employee of the tenant may actually be deemed the licensee of the tenant. The earlier opinion of this court indicated that the jury could have made the finding that the tenant was willing to have Snyder enter the premises or remain thereon. 46 N.J. Super. at pages 326, 327. In view of the factual vacuum that existed before the proofs were submitted when that opinion was rendered, it was not a conclusive adjudication on this issue; accordingly, defendants are quite in order in arguing that there is no "law of the case" as to Snyder's status as a licensee vis-a-vis the tenant. For reasons presently to be stated, however, our reading of the testimony reveals that Judge Clapp's prognosis in this respect was borne out by the evidence.
Under the conventional, tripartite classification, the key to the distinction between licensees and trespassers is in the permission to the plaintiff to enter the premises or in the landowner's express or implied consent to his remaining thereupon. Consent to his presence is the "touchstone" of the landowner's liability to a licensee as opposed to a trespasser. 2 Harper & James, Law of Torts (1956), § 27.8, p. 1471; Restatement, Torts, § 330, p. 893. And, "* * * tolerance in some circumstances may be so pronounced as to lead to a conclusion that it was really tantamount to permission." Adams v. Naylor, [1944] K.B. 750, quoted in Imre v. Riegel Paper Corporation, 24 N.J. 438, 446 (1957); Wytupeck v. City of Camden, 25 N.J. 450, 463 (1957); Restatement, Torts, § 330, p. 893, comment (b).
In this regard, the authorities suggest that the social guest of an employee, while not an invitee, is nevertheless impliedly permitted to be upon the premises. See Prosser, Torts (2d ed. 1955), § 77, at p. 446; Annotation, 89 A.L.R. *346 757, 758 (1934); O'Neill v. Gem Building & Loan Ass'n., 9 N.J. Misc. 1084 (Sup. Ct. 1931) (child delivering raincoat to her sister, who was an employee, held a licensee as to the owner); Willins v. Ludwig, 136 N.J.L. 208, 211 (E. & A. 1947) (salesman selling shoes to tavern-owner's wife). Moreover, it is hardly in consonance with the ordinary, lay conception of a "trespasser" to include the guest of an employee within that category. Of course, where the employer has expressly prohibited social guests and the plaintiff has knowledge of the employee's lack of authority to entertain him, the result might well be otherwise. See Restatement, Agency, § 242, pp. 545, 546, illust. 1.
It has become a commonplace to state that the traditional immunities of landowners and occupiers are giving way to the imposition of liability where there is a substantial foreseeability of harm to others likely to enter upon their premises. But the fact that our courts have expanded the duties owed to social guests and licensees, Mistretta v. Alessi, supra; Debes v. Morganroth, 48 N.J. Super. 39 (App. Div. 1957); Berger v. Shapiro, supra, was never intended to justify the whittling away of the newly-recognized liabilities and obligations in the guise of classifying persons as "trespassers" who would otherwise be included in the catalogue of "licensees."
Apart from the authorities and our own conviction that Snyder was a licensee as to the tenant in the sense of having been permitted to come on the premises in the first instance, the evidence adduced at the trial virtually compels us in any case to conclude that the tenant must be deemed to have consented to plaintiff's remaining on the premises.
The testimony affirmatively shows that the night foreman, Batten, was present while plaintiff remained on the premises waiting for Sellick to finish his work, and that Batten rode down on the elevator with plaintiff and Sellick. The foreman apparently gave no indication to either man that plaintiff's presence was unwelcome. In addition, other employees on the third floor knew of plaintiff's presence and accepted him without objection.
*347 On a technical level, the narrow question suggested by this evidence is whether the knowledge of foreman Batten as to plaintiff's presence may be imputed to his employer so that plaintiff was in the building with the tenant-employer's consent. This, in turn, depends upon Batten's scope of authority. Restatement, Agency, § 272 et seq. Unlike the trial judge and the defendants who evidently regard as controlling the authority, or lack of it, in the employee to invite guests, we find of greater importance the inquiry as to the foreman's scope of authority. Thus defendants' analogy to Lippman v. Ostrum, 22 N.J. 14, 26 (1956), and to Restatement, Agency, § 242, fails. And as to the foreman, who was "in charge of that floor," it must be held, in the absence of evidence to the contrary, that he was empowered to admit the friend of an employee as a brief guest on the premises.
If it is contended that Batten lacked such authority, the burden was clearly upon the defendants to come forward with some evidence that the foreman had no power to bind his employer in consenting to the presence of an employee's friend. It is a familiar principle that the burden of establishing the existence of a fact or circumstance is on the party relying thereon. See, e.g., Collins Realty Co. v. Sale, 104 N.J. Eq. 138, 142 (E. & A. 1928). And in 9 Wigmore, Evidence (3d ed. 1940), § 2486, p. 275, the author states that "the burden of proving a fact is said to be put on the party who presumably has peculiar means of knowledge enabling him to prove its falsity if it is false." In our judgment, just as it would be incumbent on the defendants to prove that a warning has been given where a plaintiff's cause of action rests on the absence of a warning, Cetofonte v. Camden Coke Co., 78 N.J.L. 662, 665 (E. & A. 1909); Berger v. Shapiro, supra, at p. 103, it was incumbent upon the employer in this case to meet the inference arising from plaintiff's case that Batten's knowledge was imputable by demonstrating either that one of the partners had expressly told Batten to eject visitors or that, in accepting plaintiff's presence, Batten was otherwise acting adversely *348 to his employer's interests. See Restatement, Agency, §§ 279, 280, 282. That defendants failed to sustain this burden is clear, for Sachs testified: "There was no reason to talk [to the foreman] about visitors; I never heard of a visitor before."
Nor do we think that 12 reasonable minds, properly instructed, would have been impressed with Sachs' testimony that he never authorized his employees to bring guests upon the premises. There were two other partners, neither of whom testified, and there was no indication that they had not given such authorization. The defendants' unexplained failure to produce two of the three employers permitted an inference that their testimony would have been unfavorable to the defendants' case. Michaels v. Brookchester, Inc., 26 N.J. 379, 391 (1958); 2 Wigmore, op. cit., supra, § 286. The jury might well have concluded from Sachs' failure to testify that he had expressly denied his employees the authority to bring visitors, and from the failure of the other two employers to testify at all, that Sellick did in fact have the authority to bring plaintiff upon the premises.
Under any of the three approaches discussed  viz., that the social guest of an employee is, by nature, ordinarily a licensee rather than a trespasser; that the tenant is bound by the knowledge of its foreman as to plaintiff's presence in the building; or that the defendants failed to prove that the tenant's employees lacked the authority to invite occasional visitors to the premises  we conclude that the court erred in categorizing this plaintiff as a trespasser as a matter of law. Accordingly, we hold that it was open to the jury to find that plaintiff was a licensee as to the tenant and, as such, an invitee as to the landlord. This disposition renders academic the suggestion that Snyder was an invitee in view of the circumstance that he was, at the time he fell into the "trench," actually assisting Sellick in the performance of his, Sellick's, duties as an employee.
Defendants' argument that plaintiff was contributorily negligent as a matter of law is without merit, as is *349 the argument that plaintiff failed to present a prima facie case of negligence.
The judgment is reversed and a trial de novo awarded to plaintiff against all defendants.