59 N.J. Super. 384 (1960)
157 A.2d 840
RALPH S. WILLIAMS, PLAINTIFF-APPELLANT,
v.
MORRISTOWN MEMORIAL HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1960.
Decided February 5, 1960.
*386 Before Judges GOLDMANN, FREUND and HANEMAN.
*387 Mr. John B. Applegate argued the cause for appellant (Messrs. Besson & Applegate, attorneys).
Mr. Clifford W. Starrett argued the cause for respondent (Messrs. Schenck, Smith & King, attorneys).
The opinion of the court was delivered by HANEMAN, J.A.D.
Plaintiff Ralph S. Williams appeals from a judgment of the Morris County District Court granting the motion of defendant Morristown Memorial Hospital for an involuntary dismissal at the conclusion of the entire case and from the denial of his motion for a new trial.
On the evening of October 22, 1956, between 11:00 and 11:30 P.M., plaintiff drove his wife to the defendant hospital in response to a telephone call informing him that their daughter had just undergone a dangerous delivery. It was raining hard as he drove along the private approach driveway leading from the public street to the main front entrance of the hospital. He proceeded around a traffic island in said driveway and discharged his wife at the front entrance. Thereupon, he continued around the island and re-traversed a portion of the driveway initially travelled on his approach to the main entrance, in order to find a place to park. He parked his car close to the curb on his right, facing the main entrance, and to the rear of two parked cars. It is undisputed that defendant permitted such parking at this location. When plaintiff got out of his car from the driver's side on to the roadway, he discovered that the heavy rainfall had caused a flow of water, some of which ran over the top of his shoes. Although there was a metal lamp post near the point where he parked, plaintiff testified that it was dark. However, he did observe a cement walkway at his right about 6-7 feet distant, leading to the front entrance. The sidewalk was separated from the roadway at this point by an irregular strip of grass, 15 feet wide at the widest point. Plaintiff could have walked in the driveway for some feet  either in the direction of the front entrance *388 or in the opposite direction  and have gained access to the sidewalk without crossing the grass strip. He could have as well continued walking the length of the driveway to the front entrance without using the sidewalk. Any one of these three modes of approach to the hospital would have exposed him, however, to the dangers of contact with approaching vehicles. He took the most direct route to the sidewalk by walking in front of his car and crossing the grass plot. When he reached the point where the grass and sidewalk met he tripped over a low wire fence about 18 inches high and fell heavily to his knees. Plaintiff testified that he did not see the fence and that no warning of any kind had been provided by the hospital.
Defendant's maintenance supervisor testified that the fence in question had been erected in order to prevent people from crossing the grass plot. He further testified that the fencing had previously extended around the entire grass plot, but had been so frequently trampled down that the part along the curbside had been removed.
It was not disputed that plaintiff's presence on the hospital grounds generally was in the capacity of an invitee.
At the end of plaintiff's case, defendant moved for an involuntary dismissal. The court reserved decision and directed defendant to put in its case. At the end of the entire case the trial judge granted defendant's motion to dismiss on the ground that plaintiff had exceeded the scope of his invitation in crossing the grass plot and that he was, as a matter of law, a trespasser to whom defendant owed no duty except to refrain from willful injury.

I.
Plaintiff contends that the question of whether he exceeded the scope of his invitation on defendant's premises should have been submitted to the jury and not determined by the court.
Our Supreme Court recently has reaffirmed the rule that the duty owed by an occupier of land to third persons *389 coming thereon is determined according to the status of such third person, i.e., invitee, licensee or trespasser.
"Indeed, the ascertainment of that status is an essential preliminary to the application of the particular standard of care to be exercised by the land occupier."
Snyder v. I. Jay Realty Co., 30 N.J. 303, 311 (1959). The distinction between invitees, licensees and trespassers has been stated many times: invitees come on to the premises by invitation, either express or implied; licensees are not invited, but their presence is suffered; trespassers are neither invited nor suffered. Lordi v. Spiotta, 133 N.J.L. 581, 584 (Sup. Ct. 1946); Snyder v. I. Jay Realty Co., supra. An owner or occupier of lands owes a greater duty to invitees than to licensees coming upon his premises. He must exercise ordinary care to render the premises reasonably safe for the purposes embraced in the invitation to an invitee, Murphy v. Core Joint Concrete Pipe Co., 110 N.J.L. 83 (E. & A. 1933). As for a licensee, only if the occupier knows of some artificial or natural condition on the premises and, in the exercise of reasonable foresight, should realize that it involves an unreasonable risk to a licensee which he could reasonably anticipate that the licensee would not observe and avoid, is he under a duty to take reasonable care to make the condition safe or to give a warning of its presence and of the extent of the risk involved. Mistretta v. Alessi, 45 N.J. Super. 176 (App. Div. 1957); Berger v. Shapiro, 30 N.J. 89 (1959); 2 Harper and James, The Law of Torts, § 27.9, p. 1472 (1956).
There is no doubt that the special obligation owed by an occupier of land to invitees is limited to that part of the premises covered by his invitation, express or implied. Gudnestad v. Seaboard Coal Dock Co., 15 N.J. 210 (1954).
"This `area of invitation' will of course vary with the circumstances of the case. * * * [I]t extends to all parts of the premises to which the purpose may reasonably be expected to take him, and to those which are so arranged as to lead him reasonably to think that they are open to him." (Emphasis supplied.) *390 Prosser on Torts, § 78, p. 458 (1955). There is much persuasive authority to the effect that an invitation extends to such parts of premises as the land owner ought in reason to understand that his invitees would understand were for their use or, in other words, to those parts to which the invitee reasonably may be expected to go in view of the invitation given to him. Nary v. Dover Parking Authority, 58 N.J. Super. 222 (App. Div. 1959); Synder v. I. Jay Realty Co., supra, 30 N.J., at page 314; Roy v. Amoskeag Fabrics, Inc., 93 N.H. 324, 41 A.2d 607 (N.H. Sup. Ct. 1945); 38 Am. Jur., Negligence, § 100; 65 C.J.S. Negligence § 48 (1950).
"Whether or not the invitee stayed within the confines of the invitation is usually an issue for the jury. Even where the deviation was quite marked and an employee of a contractor on the property went upon land immediately adjacent under an alleged implied invitation, his right to do so was at least determinable by the jury. * * *
Under the circumstances here, where the plaintiff admittedly was invited upon defendant's premises and it is alleged he exceeded his invitation, the question whether the invitation was extended to that part of the premises where the accident occurred is one for the jury." (Emphasis supplied.)
Gudnestad v. Seaboard Coal Dock Co., supra, 15 N.J., at page 219; Hendrikson v. Koppers Co., Inc., 11 N.J. 600 (1953).
Defendant, citing Cortright v. Trustees of Rutgers College in New Jersey, 120 N.J.L. 246 (E. & A. 1938), urges that the trial judge was correct in directing a verdict in its behalf. In the Cortright case, plaintiff was leaving a gymnasium where she had attended a concert when she departed from the walkway running from the gymnasium to the street and took a "short-cut" to her car across the lawn adjacent to the sidewalk. The sidewalk was 75 feet wide at the entrance and for about one-third of the distance to the public sidewalk, and 34 feet wide for the balance of that distance. It was raining and, when plaintiff saw other people walking *391 on the lawn, she decided to take that route herself. As she left the walk she fell over a wire which she had not seen and which was stretched on posts to act as a barrier to keep people from walking on the lawn. Although the court concluded that there was an implied invitation to plaintiff to use the sidewalk, it further found as a matter of law that the invitation did not extend to the grass, even though testimony was offered on behalf of plaintiffs that it was customary for persons to use the lawn as an exit from the building  particularly when the weather was stormy or there was a large crowd.
The facts of Cortright can be distinguished from those in the case sub judice. Plaintiff proceeded from the roadway in the most direct course to the sidewalk leading to the main hospital building. He did not stray from a walkway, but rather took the shortest and most direct route from the parking space provided for him to the sidewalk in order to escape the rain water that was running over his feet and to avoid ambulating in the driveway provided for vehicular traffic. He was justified in assuming that the driveway upon which he found himself was not a proper walkway. In short, plaintiff did not depart from a recognized path of ingress or egress but was merely attempting to reach that path. There was no fence separating the grass plot from the curb, nor was there any sign or other warning indicating that defendant did not desire plaintiff to take this route. To the contrary, defendant, knowing that people had trampled its fence in crossing over the grass plot, had removed that part of the fence nearest to the curb rather than construct a larger one or erect signs or give proper warning of the existence of a fence. Defendant removed only a part of the fence and did not provide the public, which was concededly invited to park at that point in the driveway, with any notice of the 18-inch obstruction separating the grass plot from the sidewalk. If plaintiff had gotten out of his car from the right-hand side rather than from the driver's side, he would have had to cross over the grass plot or walk along and *392 balance himself on the narrow curb to obtain access to the sidewalk.
In the light of the facts presented, reasonable men might differ as to whether or not defendant reasonably should have anticipated that plaintiff, in view of the invitation given to him, would cross the grass plot in order to get from his car to the sidewalk leading to the hospital entrance. It follows that a question for determination by a jury was raised.

II.
Plaintiff further maintains that even if he were not an invitee on the grass plot, the jury reasonably might have concluded that he was at least a licensee thereon.
"[O]ne may enter the premises of another without invitation, express or implied, and be regarded as a licensee rather than a trespasser, if his presence was either expressly or impliedly permitted by the possessor of the premises."
Snyder v. I. Jay Realty Co., supra, 30 N.J., at page 312.
The above-recited facts warrant the conclusion that even though plaintiff be held not an invitee, the jury might reasonably have found that defendant had given its implied permission to him to cross the grass plot and hence that he was a licensee. Moreover, if the jury concluded that plaintiff was a licensee, it also could have found, in the light of the facts presented, that defendant had breached a duty which was owing to plaintiff.
It must be remembered that the Cortright case was decided in 1938, when an occupier of lands was held not to be answerable to licensees except for willful or wanton acts, and that as stated, supra, there have been rather "striking developments" in the laws of New Jersey broadening the liability of an occupier of land as to licensees in the past several years, Mistretta v. Alessi, supra, 45 N.J. Super., at page 179. Since there was no evidence of any willful or wanton conduct on the part of the defendant in the Cortright *393 case, the significance of the plaintiff's status ended, under the law at that time, when the court determined that she was not an invitee, and it was therefore unnecessary to submit the issue of whether she was a licensee or a trespasser to the jury. On the other hand, in the case sub judice, even if the trial court was correct in finding as a matter of law that plaintiff was not an invitee, it was still significant, under modern tort doctrines, to determine whether he was a licensee or a trespasser, and that question should have been submitted to the jury.
For interesting reasoning on a somewhat analogous situation, see the annotation discussing the liability of a city or an abutting landowner for injury to pedestrians while crossing the strip of grass separating the public highway from the public sidewalk. 59 A.L.R. 387 (1929); 19 A.L.R.2d 1053 (1951).
For the reasons expressed above, the trial court erred.
Reversed and remanded for a new trial.